## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVELYN "EVIE" PARTS | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | Case 2:25-cv-04702-CMR |
| | : | |
| SWARTHMORE COLLEGE, | : | |
| PETER CARROLL, VALERIE GOMEZ | : | |
| BRAD KOCH, CHRISTINA EPPS- | :  : | |
| CHIAZOR, and NATIONAL | : | |
| COLLEGIATE ATHLETIC | : | |
| ASSOCIATION | : | |
| *Defendants.* | : | |

---

### DEFENDANTS, SWARTHMORE COLLEGE, PETER CARROLL, VALERIE GOMEZ, BRAD KOCH, AND CHRISTINA EPPS-CHIAZOR'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(B)(6) OR, IN THE ALTERNATIVE, TO STAY

Defendants Swarthmore College, Peter Carroll, Valerie Gomez, Brad Koch, and Christina Epps-Chiazor hereby moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) or, alternatively, to stay the case pending the Supreme Court's decision in the case *West Virginia v. B.P.J.*, No. 24-43, 2025 WL 1829164 (U.S. 2025). The reasons supporting this Motion are fully set forth in the accompanying Memorandum of Law, which is incorporated herein as though fully set forth in this Motion.

WHEREFORE, Defendants Swarthmore College, Peter Carroll, Valerie Gomez, Brad Koch, and Christina Epps-Chiazor respectfully requests that the Court grant their Motion to Dismiss.

Dated: October 27, 2025                  Respectfully submitted,

                                         */s/ Michael E. Baughman*
                                         Michael E. Baughman
                                         Attorney I.D. No. 78690
                                         TROUTMAN PEPPER LOCKE LLP
                                         3000 Two Logan Square
                                         Eighteenth and Arch Streets
                                         Philadelphia, PA 19103
                                         Telephone: (215) 981-4964
                                         Email: michael.baughman@troutman.com


                                         Judah H. Rome (pro hac vice pending)
                                         TROUTMAN PEPPER LOCKE LLP
                                         2800 Financial Plaza
                                         Providence, RI  02903
                                         Telephone: (401) 276-6433
                                         Email: judah.rome@troutman.com

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVELYN "EVIE" PARTS | : | |
|     *Plaintiff*, | : | |
| | : | |
| v. | : | Case 2:25-cv-04702-CMR |
| | : | |
| SWARTHMORE COLLEGE, | : | |
| PETER CARROLL, VALERIE GOMEZ | : | |
| BRAD KOCH, CHRISTINA EPPS- | :   : | |
| CHIAZOR, and NATIONAL | : | |
| COLLEGIATE ATHLETIC | : | |
| ASSOCIATION | : | |
|     *Defendants*. | : | |

## **<u>PROPOSED ORDER</u>**

AND NOW, on this _____ day of _____, 2025, upon

consideration of Defendants Swarthmore College, Peter Carroll, Valerie Gomez, Brad Koch, and

Christina Epps-Chiazor Motion to Dismiss and accompanying Memorandum of Law incorporated

therein, IT IS HEREBY ORDERED that Defendants Swarthmore College, Peter Carroll, Valerie

Gomez, Brad Koch, and Christina Epps-Chiazor's Motion to Dismiss is GRANTED pursuant to

Federal Rule of Civil Procedure 12(b)(6) and the Complaint is DISMISSED WITH PREJUDICE.


BY THE COURT:


_____
Rufe, J.

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EVELYN "EVIE" PARTS | : | |
|     *Plaintiff,* | : | |
| | : | |
| v. | : | Case 2:25-cv-04702-CMR |
| | : | |
| SWARTHMORE COLLEGE, | : | |
| PETER CARROLL, VALERIE GOMEZ | : | |
| BRAD KOCH, CHRISTINA EPPS- | :   : | |
| CHIAZOR, and NATIONAL | : | |
| COLLEGIATE ATHLETIC | : | |
| ASSOCIATION | : | |
|     *Defendants.* | : | |

---

**DEFENDANTS, SWARTHMORE COLLEGE, PETER CARROLL,**
**VALERIE GOMEZ, BRAD KOCH, AND CHRISTINA EPPS-CHIAZOR'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE**
**COMPLAINT PURSUANT TO RULE 12(B)(6) OR, IN THE ALTERNATIVE, TO STAY**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   FACTUAL BACKGROUND ..................................................................................3

III.  STANDARD OF REVIEW ....................................................................................4

IV.   ARGUMENT ..........................................................................................................4

    A.    This Court Should Dismiss Plaintiff's Title IX Claims Because
         Swarthmore Was Not on Clear Notice that Segregating Athletes Based on
         Biological Sex Violates Title IX.................................................................4

         1.    Because it is Spending Clause Legislation, a Damages Claim
              Under Title IX Requires Plaintiff to Show that Defendant Engaged
              in Intentional Discrimination that Violated the Clear Terms of the
              Statute ...........................................................................................4

         2.    Swarthmore Was Not on Clear Notice that Title IX Precludes
              Placing Limits on Transgender Student Participation in Women
              Sports ............................................................................................6

    B.    This Court Should Dismiss Plaintiff's State Law Claims Too .............................12

V.    CONCLUSION......................................................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. City of Philadelphia*,
   895 F.2d 1469 (3d Cir. 1990), *superseded in part by statute*, Civil .......................................12

*Arlington Central Sch. Dist. Bd. of Ed. v. Murphy*,
   548 U.S. 291 (2006)..........................................................................................................6, 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................................4

*B.P.J. v. West Va. State Bd. of Educ.*,
   98 F.4th 542 (2024).................................................................................................................10

*Barnes v. Gorman*,
   536 U.S. 181 (2002)...................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................................4

*Boyanowski v. Cap. Area Intermediate Unit*,
   215 F.3d 396 (3d Cir. 2000).....................................................................................................13

*Britt v. Chestnut Hill Coll.*,
   632 A.2d 557 (Pa. Super. 1993)..............................................................................................13

*Clinton v. Jones*,
   520 U.S. 681 (1997).................................................................................................................11

*Commerce Bank/Pa. v. Union Nat'l Bank*,
   911 A.2d 133 (Pa. Super. 2006)..............................................................................................14

*Cooker v. Meadowood Corp.*,
   No. 21-2667, 2021 WL 4262338 (E.D. Pa. Sept. 20, 2021)...................................................12

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
   596 U.S. 212 (2022)...............................................................................................................5, 6

*Davis v. Monroe Cnty. Bd. Of Educ.*,
   526 U.S. 629 (1999)................................................................................................4, 5, 9, 10, 11

*Davis v. Wigen*,
   82 F.4th 204 (3d Cir. 2023) ....................................................................................................12

*Doe v. Boyertown Area Sch. Dist.,*
   897 F.3d 515 (3d Cir. 2018) (Jordan, J., dissenting from rehearing en banc) ........................10

*Doe v. Boyertown Area Sch. Dist.,*
   897 F.3d 518 (3d Cir. 2018)..................................................................................................10

*Gebser v. Lago Vista Indep. Sch. Dist.,*
   524 U.S. 274 (1998)...............................................................................................................5

*Goldstein v. Phillip Morris, Inc.,*
   854 A.2d 585 (Pa. Super. 2004)...........................................................................................13

*Hoy v. Angelone,*
   720 A.2d 745 (Pa. 1998) ......................................................................................................12

*in, Moody v. Atl. City Bd. of Educ.,*
   870 F.3d 206 (3d. Cir. 2017)................................................................................................12

*Jordan v. Pa. State Univ.,*
   276 A.3d 751 (Pa. Super. 2022)...........................................................................................12

*Kelly v. Jones,*
   148 F. Supp.3d 395 (E.D. Pa. 2015) ...................................................................................12

*Landis v. North American Co.,*
   299 U.S. 248 (1936).............................................................................................................11

*McKeeman v. Corestates Bank, N.A.,*
   751 A.2d 655 (Pa. Super. 2000)...........................................................................................13

*Michael v. Ghee,*
   325 F. Supp. 2d 829 (N.D. Ohio 2004)................................................................................11

*Mississippi Univ. for Women v. Hogan,*
   458 U.S. 718 (1982)...............................................................................................................9

*In re Orthopedic Bone Screw Prods. Liab. Litig.,*
   193 F.3d 781 (3d Cir. 1999).................................................................................................13

*Pennhurst State Sch. and Hosp. v. Halderman,*
   451 U.S. 1 (1981)...................................................................................................................5

*Roe v. Critchfield,*
   137 F.4th 912 (9th Cir. 2025) ..........................................................................................6, 10

*Sampathkumar v. Chase Home Fin., LLC,*
   241 A.3d 1122 (Pa. Super. 2020).........................................................................................14

*Strickland v. Univ. of Scranton*,
  700 A.2d 979 (Pa. Super. 1997) ..................................................................13

*Tennessee v. Cardona*,
  762 F. Supp. 3d 615 (E.D. Ky. 2025) ...........................................................8

*Texas v. Cardona*,
  743 F. Supp. 3d 824 (N.D. Tex. 2024) ..........................................................8

*United States v. Virginia*,
  518 U.S. 515 (1996) ......................................................................................9

*West Virginia v. B.P.J.*,
  No. 24-43, 2025 WL 1829164 (U.S. 2025) ..................................2, 10, 11, 14

**Statutes**

20 U.S.C. § 1681(a) ...........................................................................................6

Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072 ..............................12

**Other Authorities**

87 Fed. Reg. 41390 (July 12, 2022) ..................................................................7

89 Fed. Reg. 33474 (Apr. 29, 2024) ..................................................................7

89 Fed. Reg. 33886 (Apr. 29, 2024) (codified at 34 C.F.R. § 106.10) .............7

*Dear Colleague Letter Regarding Transgender Students* (Feb. 22, 2017),
  https://www.ed.gov/media/document/colleague-2017-title-ix-35085.pdf ..........7

Educ., *Sex Discrimination: Overview of the Law*, https://www.ed.gov/laws-and-
  policy/civil-rights-laws/title-ix-and-sex-discrimination/sex-discrimination-
  overview-of-law ..............................................................................................8

Exec. Order No. 13,988, 86 Fed. Reg. 7023 (Jan. 20. 2021) ...........................7

Exec. Order No. 14,201, 90 Fed. Reg. 9279 (Feb. 5, 2025) .............................8

Executive Order 14201 ......................................................................................8

Fed. R. Civ. P. 8(a)(2) .......................................................................................4

H.R. 1652, 113th ...............................................................................................9

Pub. Affs., *U.S. Departments of Justice and Education Release Joint Guidance to Help Schools Ensure the Civil Rights of Transgender Students* (May 13, 2016), https://www.justice.gov/archives/opa/pr/us-departments-justice-and-education-release-joint-guidance-help-schools-ensure-civil-rights ..........................................7

## I.    INTRODUCTION

Plaintiff, a former student-athlete at Swarthmore College ("Swarthmore" or the "College") claims that Swarthmore violated Title IX by complying with the National Collegiate Athletic Association's ("NCAA") Participation Policy for Transgender Student Athletes (the "Participation Policy").  Specifically, Plaintiff, a transgender woman, claims Swarthmore violated Title IX by following the Participation Policy and not permitting her to compete as a member of Swarthmore's Women's Track and Field Team ("Track Team") for several weeks because she is a transgender woman.

Plaintiff's Title IX claim fails because she cannot establish that Swarthmore violated the clear terms of Title IX.  Because Title IX does not explicitly provide a damages remedy and because it was passed pursuant to Congress' Spending Clause authority, the United States Supreme Court has repeatedly held that a school cannot be held liable for damages under Title IX unless it has clear notice that its conduct violates the terms of the statute.  Title IX speaks only to "sex," not to "gender identity," and, far from being clear, the executive branch of the federal government has flip-flopped repeatedly on whether Title IX protects gender identity at all, never mind whether it would preclude an institution from segregating sports activities based on biological sex.  Indeed, while the prior presidential administration suggested that gender identity is protected by Title IX, the current administration has suggested that it would ***violate*** Title IX to permit transgender female athletes to participate in women's sports.

The Courts have never clearly decided this issue, either.  To the contrary, the United States Supreme Court has granted certiorari to decide the very issue presented in this case – whether Title IX prohibits a state (or a school) from designating a women's sports team based on sex assigned

1

at birth. *See West Virginia v. B.P.J.*, No. 24-43, 2025 WL 1829164 (U.S. 2025).[1]  That the courts themselves cannot decide whether Title IX applies to the circumstances presented here without Supreme Court intervention underscores that Swarthmore was not on clear notice that its conduct violated Title IX, which is a prerequisite to issue damages.  Thus, even if the Supreme Court were to rule in the plaintiff's favor in the *B.P.J.* case – a case seeking injunctive relief, not damages – that would not be enough to award damages under Title IX here.  The Court should therefore grant Swarthmore's motion to dismiss the Title IX claim.  Alternatively, the Court should stay the case pending the decision in *B.P.J.* since a ruling in the State's favor on that case would preclude Plaintiff's claim here.

Plaintiff also brings state law claims for intentional infliction of emotional distress and civil conspiracy against Swarthmore and several of its athletic employees.  These claims are wholly without merit.  A claim for intentional infliction of emotional distress, if available at all in Pennsylvania, is available only for intentional conduct that is so outrageous and objectively atrocious that it is utterly intolerable in a civilized society.  Following an NCAA policy, which was issued consistent with federal government policy, hardly meets this standard.  Indeed, whatever one may think about the charged issues presented by this case, it is indisputable that Americans are divided on the issue.  And the civil conspiracy claim fails because Plaintiff has identified neither a conspiracy nor an actionable tort the defendants conspired to commit.

---

[1] The Petition for Certiorari, which was granted on July 3, 2025, may be found here: 20240711112756059_7.11 BPJ Petition final.pdf

## II.    FACTUAL BACKGROUND[2]

Plaintiff is a transgender woman and graduated from Swarthmore in 2025.  *See* Complaint (ECF 1) ¶¶ 41, 42.  In the fall of 2020, during her freshman year, she was a member of Swarthmore's Women's Cross Country Team.  *Id.* ¶ 43.  Plaintiff did not compete again for the Cross Country or Track Teams until the fall of 2023, first due to COVID related shutdowns, and then from Fall 2021 through Fall 2023, for medical reasons.  *Id.* ¶¶ 44-48.  Plaintiff continued to be a member of and compete for the Track Team through the beginning of the 2024-25 winter indoor season.  *Id.* ¶¶ 49-51, 53.

On February 6, 2025, the NCAA issued the Participation Policy, which banned transgender women from competing on a women's team.  *Id.* ¶ 4.  The NCAA required that member schools, such as Swarthmore, adhere to the NCAA Participation Policy, and if schools did not, they could be sanctioned.  *Id.* ¶ 6.  Also on February 6, 2025, Plaintiff sent Swarthmore an email asking how the College was going to respond to the NCAA Participation Policy.  *Id.* ¶ 57.  Swarthmore and its Athletics Staff, understanding that the Participation Policy was challenging for Plaintiff, attempted to work with Plaintiff to allow her to continue to compete, but ultimately concluded that it was obligated to follow the Participation Policy so as to protect other members of the Women's Track Team's opportunity to compete.  *Id.* ¶¶ 58-60, 67.  Accordingly, Plaintiff remained a member of the Women's Track Team but was not allowed to compete in women's athletic events while representing Swarthmore for a portion of the Spring 2025 season.  *Id.* ¶ 69.

---

[2] For the purpose of this Motion only, the facts are taken from the Complaint and presumed to be true.  Defendants expressly reserve the right to contest all of the allegations in the Complaint.

## III.    STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion, the Court must accept the facts pleaded in the complaint as true, but it need not accept, without more, legal conclusions masquerading as facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The allegations in a complaint "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV.    ARGUMENT

### A.    This Court Should Dismiss Plaintiff's Title IX Claims Because Swarthmore Was Not on Clear Notice that Segregating Athletes Based on Biological Sex Violates Title IX

#### 1.    Because it is Spending Clause Legislation, a Damages Claim Under Title IX Requires Plaintiff to Show that Defendant Engaged in Intentional Discrimination that Violated the Clear Terms of the Statute

Plaintiff's claim under Title IX is limited to a claim for money damages; there is no injunctive relief sought.  The text of Title IX does not explicitly contemplate a claim for money damages.  The Supreme Court has nevertheless implied a private right of action for money damages, but only in limited circumstances, namely, where the Plaintiff shows that a school "engages in intentional conduct that violates the clear terms of the statute."  *Davis v. Monroe Cnty. Bd. Of Educ*., 526 U.S. 629, 642 (1999). [3]  In *Davis*, the Supreme Court allowed a claim against a

---

[3] Plaintiff seeks relief in the form of compensatory and punitive damages, as well as attorney's fees.  Compl., ECF 1 at 23.  Title IX does not permit recovery of punitive damages, and compensatory damages are limited to contract-based damages, not including emotional

4

school for peer-on-peer sexual harassment, noting that its prior case law permitted such a claim only "where the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge." *Id.* (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

This narrow reading of Title IX is dictated by the fact that Title IX was passed pursuant to the Constitution's Spending Clause.  As the Supreme Court said in *Davis*:

> In interpreting language in spending legislation, we thus "insis[t] that Congress speak with a clear voice," recognizing that "[t]here can, of course, be no knowing acceptance [of the terms of the putative contract] if a State is unaware of the conditions [imposed by the legislation] or is unable to ascertain what is expected of it."

*Davis*, 526 U.S. at 640 (quoting *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 24-25 (1981)).

Under the Spending Clause, "statutes operate" by "conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds."  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998).  "Unlike ordinary legislation, which 'imposes congressional policy' on regulated parties 'involuntarily,' Spending Clause legislation operates based on consent: 'in return for federal funds, the [recipients] agree to comply with federally imposed conditions.'"  *Cummings*, 596 U.S. at 219 (quoting *Pennhurst*, 451 U.S. at 16, 17).  For that reason, the "legitimacy of Congress' power" to enact Spending Clause legislation rests on "whether the [recipient] voluntarily and knowingly accepts the terms of th[at] 'contract.'"  *Barnes*, 536 U.S. at 186 (quoting *Pennhurst*, 451 U.S. at 17).  Thus, "[r]ecipients cannot 'knowingly accept' the deal with the

---

distress.  *See Barnes v. Gorman*, 536 U.S. 181 (2002); *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 229–30 (2022).

Federal Government unless they 'would clearly understand ... the obligations' that would come along with doing so." *Cummings*, 596 U.S. at 219 (quoting *Arlington Central Sch. Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 296 (2006)).

Swarthmore, therefore, can only be liable for money damages if Plaintiff shows that Swarthmore was on clear notice that excluding transgender female athletes from competing in sports with athletes assigned female at birth violates Title IX. As explained more fully below, Plaintiff cannot make this showing. Indeed, the Ninth Circuit recently held just that in *Roe v. Critchfield*, 137 F.4th 912 (9th Cir. 2025), finding the "clear notice" standard required denial of relief in a similar Title IX claim: "Given the clear notice rule [there was no showing] that the State had clear notice at the time it accepted federal funding that Title IX prohibits segregated access to [bathrooms and other facilities] on the basis of transgender status." *Id.* at 931. So too here.

### 2. Swarthmore Was Not on Clear Notice that Title IX Precludes Placing Limits on Transgender Student Participation in Women Sports

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). Title IX does not define what the term "sex" means, but it nowhere mentions "gender identity." As the Ninth Circuit held in *Critchfield*, one need look no further than the language of the statute to see that it does not clearly require treating transgender women and women the same in every circumstance. *Critchfield*, 137 F.4th at 930.

Although the Executive Branch has provided interpretations of the meaning of "sex," that guidance has been the opposite of clear. To the contrary, the Executive Branch has diametrically changed how it reads Title IX multiple times just in the last 10 years. In May 2016, under President Obama, the Department of Education and the Department of Justice issued joint guidance

6

clarifying that Title IX protections extend to transgender students.  This guidance required schools to allow transgender students to use bathrooms and locker rooms consistent with their gender identity.[4]  After President Trump took office, he rescinded this guidance in a February 2017 Dear Colleague Letter, citing to several court decisions which the administration claimed called into question whether Title IX covers forms of discrimination that are not on the basis of biological sex.[5]  After President Biden's election in 2020, the guidance changed again with the issuance of an executive order affirming that Title IX's prohibition on sex discrimination includes discrimination based on gender identity and sexual orientation "so long as the laws do not contain sufficient indications to the contrary."[6]

In 2022, the Department of Education proposed changes to Title IX regulations to explicitly include protections for transgender students.  87 Fed. Reg. 41390 (July 12, 2022).  The Final Rule was issued in 2024.  89 Fed. Reg. 33474 (Apr. 29, 2024).  While the regulations did not specifically address the issue of transgender student athletes, they did include a statement that "[d]iscrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity."  89 Fed. Reg. 33886 (Apr. 29, 2024) (codified at 34 C.F.R. § 106.10).

---

[4] U.S. Dep't of Just. Off. of Pub. Affs., *U.S. Departments of Justice and Education Release Joint Guidance to Help Schools Ensure the Civil Rights of Transgender Students* (May 13, 2016), https://www.justice.gov/archives/opa/pr/us-departments-justice-and-education-release-joint-guidance-help-schools-ensure-civil-rights.

[5] U.S. Dep't of Just. Civ. Rts. Div. and U.S. Dep't of Educ. Off. for Civ. Rts., *Dear Colleague Letter Regarding Transgender Students* (Feb. 22, 2017), https://www.ed.gov/media/document/colleague-2017-title-ix-35085.pdf.

[6] Exec. Order No. 13,988, 86 Fed. Reg. 7023 (Jan. 20. 2021).

The 2024 Rule spawned multiple lawsuits challenging whether gender identity is covered by Title IX. In *Texas v. Cardona*, 743 F. Supp. 3d 824, 872 (N.D. Tex. 2024), the court held that "'sex' in Title IX means biological sex." The court explained:

> Read together, the combined meanings of "sex" and "subjected to discrimination" reveal that Title IX *only* prohibits differential treatment that disfavors, denies, excludes, or otherwise treats one biological sex worse than the other. But Title IX does *not* prohibit differential treatment that allows for sex-separation or sex-specific benefits, provided that one biological sex is not treated as inferior to the other in the process. Recognition of innate biological differences is permissible—encouraged, even—under Title IX while invidious subjugation based on such differences is not.

*Id.* at 873 (emphasis in original).

Similarly, in *Tennessee v. Cardona*, 762 F. Supp. 3d 615, 622 (E.D. Ky. 2025), the court held that "there is *nothing* in the text or statutory design of Title IX to suggest that discrimination 'on the basis of sex' means anything other than it has since Title IX's inception—that recipients of federal funds under Title IX may not treat a person worse than another similarly-situated individual on the basis of the person's sex, i.e., male or female." (emphasis in original). President Trump then issued guidance agreeing with the interpretation that Title IX does not apply to gender identity and stated that these court decisions overturned the 2024 Title IX Regulations and the 2020 Regulations then were, in effect, reinstated.[7] Soon after that guidance, on February 5, 2025, President Trump signed Executive Order 14201, entitled "Keeping Men Out of Women's Sport."[8] The Executive Order went even further, suggesting that allowing transgender women to compete in women's sports **violates** Title IX and stating it is "the policy of the United States to rescind all

---

[7] U.S. Dep't of Educ*., Sex Discrimination: Overview of the Law*, https://www.ed.gov/laws-and-policy/civil-rights-laws/title-ix-and-sex-discrimination/sex-discrimination-overview-of-law (last accessed Oct. 23, 2025).

[8] Exec. Order No. 14,201, 90 Fed. Reg. 9279 (Feb. 5, 2025).

funds" from educational institutions that allow people who were classified as male at birth to participate in women's athletic events.

Thus, the question of whether Title IX applies to gender identity at all is not remotely "clear." It is, instead, a matter of raging political debate.[9] Swarthmore could not have violated the "clear terms" of Title IX or "ascertain[ed] what is expected of it," *Davis*, 526 U.S. at 640, when even the Executive Branch of the federal government cannot answer the question of whether Title IX applies to gender identity and has issued interpretations of the law which are diametrically opposed to each other.

Moreover, even assuming Title IX applies generally to "gender identity," that does not mean that a recipient of federal funds can never draw distinctions between transgender individuals and cisgender individuals, just as there are circumstances where it does not violate Title IX to treat biological men and women differently. For example, Justice Ginsburg, writing for the United States Supreme Court in *United States v. Virginia*, 518 U.S. 515, 533 (1996), recognized the "inherent differences" between men and women, saying that those differences are "cause for celebration." In the *Virginia* case, the Supreme Court recognized that discrimination based on sex is generally not allowed but also held that when "'important governmental objectives and . . . the discriminatory means employed' are 'substantially related to the achievement of those objectives,'" different treatment is acceptable. *Id.* (quoting *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982)). Accordingly, the *Virginia* Court recognized that there are situations where different treatment based on sex is acceptable, and such decisions are generally subject only to intermediate scrutiny. A court may reasonably conclude that the Participation Policy passes

---

[9] It is worth noting, then, that members of Congress have attempted to amend Title IX to add protections for transgender people. Those efforts have failed. *See*, *e.g.*, H.R. 1652, 113th Cong. (2013); S. 439, 114th Cong. (2015).

intermediate scrutiny. *See Critchfield*, 137 F.4th at 922–26 (concluding that policy relating to use of bathrooms and other facilities was subject to intermediate scrutiny, but passed this scrutiny).

It is true that the Fourth Circuit, relying on Title IX, struck down a West Virginia statute that prohibited transgender women from competing against biological women in sports, *B.P.J. v. West Va. State Bd. of Educ.*, 98 F.4th 542 (2024).[10]  But the United States Supreme Court, in turn, granted *certiorari* in that case to resolve the differing opinions in the courts of appeal regarding Title IX's application to gender identity and the question of sports participation in particular. *See W. Virginia v. B.P.J.*, No. 24–43, 2025 WL 1829164 (U.S. July 3, 2025).

That the Supreme Court is required to clarify the law shows that Swarthmore could not possibly have been on clear notice that its actions violated Title IX.  And, even if the Supreme Court were to rule that Title IX does protect transgender students and that the ***injunction*** in that case were proper, the law was hardly "clear" when Swarthmore acted – meaning that it cannot be liable for ***money damages*** under the breach of contract framework required by the Spending Clause and *Davis*.[11]

_____

[10] The United States Court of Appeals for the Third Circuit has never squarely decided the question of whether gender identity is protected under Title IX.  In *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518 (3d Cir. 2018), the Court held that a policy that allowed transgender students to use the bathroom and locker room that corresponded with their gender identity did not violate Title IX.  The Court did not address the converse issue and, although there is some language in the opinion that might suggest barring students from use of such facilities could raise discrimination concerns, those statements are dicta, and the issue is unsettled at best.  *See Doe v. Boyertown Area Sch. Dist.,* 897 F.3d 515, 516, n.2 (3d Cir. 2018) (Jordan, J., dissenting from rehearing en banc) (dissent joined by four judges noting that the question of whether Title IX would prohibit a policy that requires use of facilities corresponding with sex assigned at birth was "open to debate" and citing "clear statement" rule).

[11] Importantly, this notice analysis is applicable at the time that Swarthmore acted, not some later date.  In *Arlington Cent. Sch. Dist. Bd. of Educ.*, 548 U.S. 291, 296 (2006), the Supreme Court held that, when determining whether a funding recipient was on notice, courts must view the analysis from the perspective of the funding recipient "who is engaged in the process of deciding whether" to accept federal funds.  *Id.*  Even if the Supreme Court in *B.P.J.* ultimately decides that Title IX does protect transgender athletes, from Swarthmore's

In sum, neither the language of the statute, administrative guidance, nor judicial decisions put Swarthmore on clear notice that the Participation Policy violates Title IX. Swarthmore could not possibly have engaged in the kind of intentional gender discrimination required to award damages – let alone have "ascertain[ed] what is expected of it," *Davis*, 526 U.S. at 640 – where one Presidential administration suggests it is discrimination to exclude transgender students from women's teams and the next Presidential administration says it is discrimination to include them.

Alternatively, to the extent that this Court does not dismiss Plaintiff's Complaint based on the foregoing analysis, the Court should stay the litigation pending the Supreme Court's decision in *B.P.J.* The Court has the inherent power to stay proceedings within its discretion. District courts weigh four factors in that determination: "[1] the potentiality of another case having a dispositive effect on the case to be stayed, [2] the judicial economy to be saved by waiting on a dispositive decision, [3] the public welfare, and [4] the hardship/prejudice to the party opposing the stay, given its duration." *Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004) (citing *Landis v. North American Co.*, 299 U.S. 248, 255 (1936)); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("[T]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). If the Court rules against the plaintiff's position in the *B.P.J.* case, there is no conceivable set of circumstances upon which this case could proceed. A stay would therefore promote judicial economy.

---

perspective, the law was not clear at the time that the College decided to comply with the NCAA Participation Policy. Accordingly, this Court should dismiss Plaintiff's Title IX claims, because Swarthmore was not on notice and cannot be liable regardless of the Supreme Court's eventual ruling in *B.P.J.*

### B.    This Court Should Dismiss Plaintiff's State Law Claims Too

The State law claims against Swarthmore and its employees are clearly baseless and this Court should dismiss them, too.

*First*, as to the intentional infliction of emotional distress claim, it is not firmly established that the Pennsylvania Supreme Court even recognizes this claim. *See Kelly v. Jones*, 148 F. Supp.3d 395, 405 n.2 (E.D. Pa. 2015) (describing intentional infliction of emotional distress as a "hypothetical tort" in light of the Pennsylvania Supreme Court's continued failure to recognize facts sufficient to state a claim). "Although such claims are often brought, and although numerous Pennsylvania decisions have discussed the doctrine, it is difficult to find a Pennsylvania case where the facts alleged were deemed sufficient." *Cooker v. Meadowood Corp.*, No. 21-2667, 2021 WL 4262338, at *4 (E.D. Pa. Sept. 20, 2021).  Where available, the plaintiff must show intentional, extreme, or outrageous conduct that causes severe emotional distress. *See Jordan v. Pa. State Univ.*, 276 A.3d 751, 775 (Pa. Super. 2022).  To adequately plead such a claim, the plaintiff must allege "behavior that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Davis v. Wigen*, 82 F.4th 204, 216 (3d Cir. 2023) (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)).  Courts determine as a matter of law whether alleged conduct is sufficiently extreme or outrageous to allow recovery. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1487 (3d Cir. 1990), *superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072, *as recognized in*, *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206 (3d. Cir. 2017).

None of the alleged conduct here could possibly be "regarded as atrocious" or "utterly intolerable in a civilized society." *Davis*, 82 F.4th at 216.  Rather, Plaintiff alleges that Defendants complied with the NCAA's Participation Policy, which applied to all NCAA member institutions nationwide.  That is not an "atrocious" or "intolerable" act.  Moreover, the see-saw guidance from

the federal government and the fact that the Supreme Court has taken up the issue is evidence that society has made no such conclusion.  Courts regularly dismiss intentional infliction of emotional distress claims premised on more egregious allegations.  *See, e.g., Britt v. Chestnut Hill Coll.*, 632 A.2d 557, 560–62 (Pa. Super. 1993) (claims that a college professor encouraged another student to sexually harass plaintiff and then took actions to sabotage plaintiff's reputation were not sufficiently severe and outrageous to state a claim); *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. 1997) (improper termination of an employee was not sufficiently severe and outrageous).

*Second*, the civil conspiracy claim is baseless.  "In order to state a civil action for conspiracy, a complaint must allege: 1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done in pursuance of the common purpose; and 3) actual legal damage." *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. 2004) (quoting *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. 2000)).  A civil conspiracy may not exist without an underlying tort.  *See Boyanowski v. Cap. Area Intermediate Unit*, 215 F.3d 396, 405 (3d Cir. 2000) (citing *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 & n.7 (3d Cir. 1999) (collecting cases)).  Moreover, "the failure of the underlying [tort] claim" is sufficient "as a matter of law to vitiate the finding of civil conspiracy *notwithstanding* the fact that it had been successfully pled as an independent cause of action." *Boyanowski*, 215 F.3d at 406. Because Plaintiff must maintain a claim for an underlying tort, if this Court dismisses the claim for intentional infliction of emotional distress, it must also dismiss Plaintiff's civil conspiracy claim.  *See id.*

Moreover, for a plaintiff to prevail on a claim for civil conspiracy, the plaintiff must show that the defendants "acted in concert to commit an unlawful act" and "that they acted with malice." *See Sampathkumar v. Chase Home Fin., LLC*, 241 A.3d 1122, 1148 (Pa. Super. 2020) (quoting *Commerce Bank/Pa. v. Union Nat'l Bank*, 911 A.2d 133, 143 (Pa. Super. 2006)).  As discussed above, Swarthmore's conduct was not unlawful.  Finally, Plaintiff's Complaint fails to allege that Defendants and the NCAA acted in concert.  Accordingly, Plaintiff's civil conspiracy claim fails as a matter of law, and this Court should dismiss Count III.

## V.    CONCLUSION

For the foregoing reasons, Defendants Swarthmore College, Peter Carroll, Valerie Gomez, Brad Koch, and Christina Epps-Chiazor respectfully request that this Court grant their Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. Alternatively, Defendants request that this Court stay this matter pending the Supreme Court's resolution of *B.P.J.*

Dated: October 27, 2025                    Respectfully submitted,



_____

Michael E. Baughman
Attorney I.D. No. 78690
TROUTMAN PEPPER LOCKE LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4964
Email: michael.baughman@troutman.com


Judah H. Rome (pro hac vice pending)
TROUTMAN PEPPER LOCKE LLP
2800 Financial Plaza
Providence, RI  02903
Telephone: (401) 276-6433
Email: judah.rome@troutman.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of October 2025, I caused a true and correct copy of the foregoing *Defendant Swarthmore College's Memorandum of Law in Support of Motion to Dismiss* to be served via CM/ECF upon all parties entitled to notice.


/s/ Michael E. Baughman
Michael E. Baughman