**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EVELYN "EVIE" PARTS | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO.** |
| | : | |
| v. | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| SWARTHMORE COLLEGE | : | |
| | : | |
| and | : | |
| | : | |
| PETER CARROLL, | : | |
| VALERIE GOMEZ, BRAD KOCH, | : | |
| AND CHRISTINA EPPS- CHIAZOR | : | |
| | : | |
| and | : | |
| | : | |
| NATIONAL COLLEGIATE ATHLETIC | : | |
| ASSOCIATION | : | |
| | : | |
| **Defendants** | : | |
| | : | |

## AMENDED COMPLAINT

Plaintiff, Evelyn Parts ("Plaintiff" or "Evie") by and through her counsel, Cirilli, LLC and Spector Gadon Rosen & Vinci, P.C., and by way of this Amended Complaint against Swarthmore College, Peter Carroll, Valerie Gomez, Brad Koch and Chrsitina Epps-Chiazor and the National Collegiate Athletic Association ("NCAA") (collectively "Defendants") and allege as follows:

## I.    INTRODUCTION

1.    Evie Parts is a woman who loves to engage in competitive long-distance running. Evie who is the youngest of four children followed her two older siblings who were distance

runners on the Swarthmore College varsity track team, to be a member of the Swarthmore College varsity track team.

2.     Unlike her siblings, Evie is a transgender woman athlete, who upon reasonable knowledge, information and belief was the only transgender woman athlete at Swarthmore College.

3.     Evie first became a member of the Swarthmore College Track team in the fall of 2020.  She took four seasons off and returned to the team in the fall of 2023 and continued to compete in the cross country, winter and outdoor track seasons.

4.     Evie's college track career suddenly was halted on February 6, 2025, when the National Collegiate Athletic Association ("NCAA") issued the *Participating Policy for Transgender Student Athletes* ("Trans Ban").  This policy bans transgender women from competing on women's teams.

5.     The NCAA is not a governmental entity but is a private organization that issued a bigoted policy that subjected transgender women to segregation and ridicule. The NCAA admitted within its own policy "schools are subject to local, state and federal legislation and such legislation supersedes the rules of the NCAA."  It admonished that schools who did not follow its policy of barring transgender women to participate in varsity athletics would do so at their own risk.

6.     Swarthmore College chose to follow the NCAA and disregard federal and state law when it implemented a policy that segregated Evie from her teammates and treated her as if she was not worthy of *inter alia* the food, medical care and transportation offered to other women varsity athletes.

7.      Swarthmore College, through its employees, Peter Carroll, Brad Koch, Christina Epps-Chiazor and Valerie Gomez pushed Plaintiff Evie Parts into such a depressive state that she engaged in self-harm and in one moment told a friend that she wanted to kill herself.

8.      From February 6, 2025, when the NCAA ban became effective through April 11, 2025, Evie was advised by Valerie Gomez and Christina Epps-Chiazor that she had two options to participate: (1) run for the men's team, or (2) run unattached to the College.

9.       Unless Evie ran as a man, Evie could not receive medical treatment at track meets from the Swarthmore College staff, unless the staff was there to serve all (not just the Colleges) athletes participating in the meet.

10.     Further, Peter Carroll and the other track coaches were prohibited from coaching Evie at track meets, she had to pay for her own entry to the races and was not allowed to receive any per diem money or food after track meet ended. Moreover, she was prohibited from traveling with the team and prohibited from wearing the Swarthmore College identification racing kit.

11.     In apparent admission that its short-lived ban was illegal, Swarthmore College fully reinstated Evie to the track team on April 11, 2025. The College allowed her to wear the Swarthmore College identification racing kit, to compete in track meets representing Swarthmore College, travel with the team, receive per diem money, receive food, coaching and medical treatment.

12.     Evie competed and represented Swarthmore in three track meets after the reinstatement through her graduation in May of 2025-with a BA degree (Biology and Environmental Studies).

13.     At the college's graduation ceremony, she walked across the stage to receive her diploma from Valerie Smith, the President of the College- an institution that unlawfully withheld her right to participate as a woman athlete and caused her great psychological and physical harm.

## II.    PARTIES

### Plaintiff, Evie Parts

14.     Plaintiff, Evelyn Parts  was an enrolled student at Swarthmore College (hereinafter "Swarthmore College" or the "College" or "Swarthmore") from August of 2020 through May of 2025.Evie has always been an avid runner and ran for her middle school and high school track and field teams.

15.     During her junior year of high school, Evie followed her biological needs and transitioned to womanhood by commencing the process of hormone replacement therapy, with the full support of her family.

16.     It was during that year that she fully began living as a woman.  She continued to compete as a distance runner through high school and thereafter at Swarthmore College, an NCAA Division III institution.

### Defendant, Swarthmore College

17.     Swarthmore College is an institution of higher learning located in Delaware County, Pennsylvania at 500 College Avenue, Swarthmore, Pennsylvania 19081.

18.     The College was founded by Quakers under the principles of the Society of Friends. According to the College's website, the College values the Society of Friends' principles, "[f]oremost among them is the individual's responsibility for seeking and applying truth and for testing whatever truth one believes one has found."

19.     During all applicable times, Swarthmore College very selectively enrolled 1702 enrolled students, valued participation in sports and sponsored 22 varsity sports teams.

20.     Swarthmore College is a Recipient under Title IX and upon information and belief they receive federal funds.

### Defendant, Peter Carroll

21.     Defendant, Peter Carroll, at all times applicable hereto, was the head coach of the Swarthmore College Cross Country and Track Teams, and as a Swarthmore College employee maintained his office as a College official at or near 500 College Avenue, Lamb-Miller Fieldhouse, Swarthmore, Pennsylvania 19081.

22.     As the Swarthmore College Head Coach of the Cross Country and Track and Field Teams, Peter Carroll, acting on behalf of the College had full responsibility and control over the operations of the team.

23.     At all times relevant to the present action, Peter Carroll acted in concert with and aided and abetted the other defendants with the common purpose of discriminating against Evie by excluding her from competing for Swarthmore College and denying her the benefits that her teammates and classmates received, including transportation, per diem for food, medical care and coaching, because she is a transgender woman.

24.     Peter Carroll worked under the substantial control of Swarthmore College.

### Defendant, Brad Koch

25.     Defendant, Brad Koch, at all times applicable hereto, was the Marian Ware Director of Athletics, Physical Education and Recreation and as a Swarthmore College employee, maintained office as a College official at or near 500 College Avenue, Lamb-Miller Fieldhouse, Swarthmore, Pennsylvania 19081.

26.     As the Swarthmore College Athletic Director, Brad Koch, acting on behalf of the College had full and final responsibility to control who could participate and compete for Swarthmore College's varsity teams and the services and benefits afforded to the student-athletes.

27.     At all times relevant to the present action, Brad Koch acted in concert with and aided and abetted the other defendants with the common purpose of discriminating against Evie by excluding Evie from competing for Swarthmore College and denying her the benefits that her teammates and classmates received, including transportation, per diem for food, medical care and coaching, because she is a transgender woman.

28.     Brad Koch worked under the substantial control of Swarthmore College.

## Defendant, Valerie Gomez

29.     Defendant, Valerie Gomez, is the Associate Director of Athletics at Swarthmore College, and as a Swarthmore College employee maintained her office as a College official at or near 500 College Avenue, Lamb-Miller Fieldhouse, Swarthmore, Pennsylvania 19081.

30.     As the Swarthmore College Associate Athletic Director, Valerie Gomez, acting on behalf of the College had responsibility to control as to who could participate and compete for Swarthmore College's varsity teams, and what services and benefits would be afforded to the student-athletes.

31.     At all times relevant to the present action, Valerie Gomez acted in concert with and aided and abetted the other defendants with the common purpose of discriminating against Evie by excluding  Evie from competing for Swarthmore College and denying her the benefits that her teammates and classmates received, including transportation, per diem for food, medical care and coaching, because she is a transgender woman.

32.     Valerie Gomez worked under the substantial control of Swarthmore College.

## Defendant, Christina Epps-Chiazor

33.    Defendant, Christina Epps-Chiazor, is the Assistant Athletic Director for Compliance and Diversity and Inclusion at Swarthmore College, and as a Swarthmore College employee maintained an office as a College official at or near 500 College Avenue, Lamb-Miller Fieldhouse, Swarthmore, Pennsylvania 19081.

34.    As the Swarthmore College Assistant Athletic Director, Christina Epps-Chiazor, acting on behalf of the College had responsibility to control as to who could participate and compete for Swarthmore College's varsity teams, and what services and benefits would be afforded to the student-athletes.

35.    At all times relevant to the present action, Valerie Gomez acted in concert with the other defendants with the common purpose of discriminating against Evie by excluding Evie from competing for Swarthmore College and denying her the benefits that her teammates and classmates received, including transportation, per diem for food, medical care and coaching, because she is a transgender woman.

## Defendant, National Collegiate Athletic Association

36.    Defendant, National Collegiate Athletic Association ("NCAA") is located at 700 W. Washington Street, Indianapolis, Indiana, 46202.

37.    At all times relevant to the present action, the NCAA acted in concert with the other defendants with the common purpose of discrimination against Evie be excluding Evie from competing for Swarthmore College and denying her the benefits that her teammates and classmates received, including transportation, per diem for food, medical care and coaching, because she is a transgender woman.

## JURISDCTION AND VENUE

38.     The causes of action which form the basis of this matter arise under Title IX (20 U.S.C.A. §1681), and common law claims.

39.     The District Court has jurisdiction over Count I (Title IX) pursuant to 20 U.S.C.A. §1681 and 28 U.S.C. §1331.

40.     The District Court has supplemental jurisdiction over Counts II and III (Intentional Infliction of Emotional Distress and Civil Conspiracy) pursuant to 28 U.S.C. §1367.

## FACTUAL BACKGROUND

41.     Evie is a transgender woman.  Her birth certificate, social security card and driver's license confirm Evie's sex as female.

42.     Evie enrolled at Swarthmore College in the fall of 2020.

43.     During her freshman year, she was a member of the Varsity Cross Country Team and fully participated as a member of the team. There were not competitions that year due to the COVID-19 pandemic.

44.     In the spring of 2021, all freshman and sophomore students were forced to endure remote learning due to the College's COVID-19 policy.  While Evie was still a member of the Women's Varsity Track Team, there were no competitions due to the COVID-19 pandemic.

45.     In the fall of 2021, her sophomore year, Evie did not participate as a member of the Swarthmore College Women's Cross-Country Team, as she was preparing for Peritoneal Pull-Through Vaginoplasty ("Male-to-Female Bottom Surgery" or "MTF Bottom Surgery").

46.     In the spring of 2022, Evie took the semester off, again she was preparing for the MTF Bottom Surgery and in the fall of 2022, Evie underwent the MTF Bottom Surgery resulting in her taking that entire semester off  and returned to Swarthmore College in the spring of 2023.

47.     While she was allowed to run on the Varsity Women's Track Team, she chose not to compete while she was recovering from the Surgery.

48.     Evie rejoined the Swarthmore College Varsity Women's Cross Country Team ("Women's Cross Country") in the fall of 2023.  During the 2023 Women's Cross-Country season, Evie competed in only two meets because she suffered a running-related injury during that  season.

49.     In the winter of 2023, Evie participated as a member of the  Women's Track Team for the Indoor Track and Field Season ("Winter Track Team"), training with the team but competing in only one meet at Haverford College because she was still recovering from the same running-related injury referenced above.

50.     In the Spring of 2024, Evie continued as a member of the Women's Track and Field Team ("Outdoor Track Team") and  participated in four meets.

51.     In the fall of 2024, Evie returned as a member of the Women's Cross-Country team and competed in 5 meets during that season.

52.     In the fall of 2024, Evie was named one of four captains of the women's track team.

53.     Evie continued as a member of the 2024-2025 Indoor Women's Track Team, competing in four meets.

54.     As a result of being a member of the Indoor Varsity Women's Track Team, the Women's Varsity Cross Country Team, and the Varsity Track and Field Team, Evie was allowed to, among other things, wear the Swarthmore College jersey when she competed at a meet as a representative of Swarthmore College, travel to and from meets with her teammates, receive medical care from Swarthmore College athletic trainers, receive coaching and instruction from her coaches relating to technique or performance, and eat the food that other members of the team are given when traveling to and from races.

55.   On or around December 6, 2024, Evie qualified for the Centennial Conference Championship meet in the 5,000-meter race and ran a time of 20:10.74, placing her 7th in the race.

56.   While she competed in 4 total meets during the indoor track season her winter track season was cut short when the College discriminated against her and unlawfully prohibited her from representing Swarthmore College as a woman because she was a transgender woman and in adherence of the dictates of the NCAA policy.

57.   On February 6, 2025, Evie sent an email to Christina Epps-Chiazor, Valerie Gomez, and Brad Koch asking whether Swarthmore College would allow her to participate and compete for Swarthmore College in light of the NCAA's policy on transgender women:

> *I would like to address this issue and make sure that Swarthmore is going to act in a responsible manner…I would appreciate being kept in the loop regarding any decisions that Swarthmore makes and if there is any information that is gained.*

58.   That same day, Gomez communicated to Evie that they "reached out to the [College] General Counsel, and other College leadership, for some guidance as to how we proceed at this time." Gomez suggested that she and Evie meet to discuss the issue.

59.   After that email exchange and before Evie met with Valeries Gomez, a race was held on February 3, 2025, at Ursinus ( the Frank Colden Invitational). Evie did not compete in that event having received no direction. from the College. Based solely on Swarthmore College's failure to provide her the protections and services that other non-transgender students received, Evie did not race at the Frank Colden Invitational, nor did she travel with the team.

60.   Evie did not hear from Swarthmore College until February 11, 2025, when Valerie Gomez acknowledged that there was a delay in responding to Evie because the College needed to meet with the General Counsel and Title IX leadership for guidance on this matter."

61.     Swarthmore College knew and acted in total disregard of the fact that by implementing the NCAA policy, it would be discriminating against transgender women competing in track meets and activities sponsored by Swarthmore College in violation of Title IX and Pennsylvania Law.

62.     Swarthmore College acted in reckless disregard of the applicable Pennsylvania statutes that identify gender identity as a protected class, when they willfully and intentionally discriminated against Evie because she is a transgender woman.

63.     On February 12, 2025, Evie met with Valerie Gomez and Christina Epps- Chiazor. The meeting took place in Valerie Gomez' office in the Swarthmore College Field House.  Notably missing from this meeting was Brad Koch, the Director of Athletics.   During the meeting the following occurred and was discussed:

    a.   The College asserted that there was no federal law that preempted the NCAA policy.

    b.   The College continued their campaign to coerce Evie into believing that there was no law in the state of Pennsylvania that protected against discrimination based on gender identity.

    c.   The College related that that they looked into the state laws and could not find any way that federal or  Pennsylvania state law superseded the NCAA ban on transgender athletes.

    d.   The College further asserted  that there is no clear legislation on point to support the College ignoring the NCAA policy.

    e.   The College compelled Evie to believe the College's position that there were no federal or Pennsylvania laws that applied to the situation.

f.  The College admitted that they anticipated consuming lawsuits over this NCAA policy as suggested by the College's Lawyers.

g.   The College made it clear that they were prohibiting Evie from representing Swarthmore College at meets on the women's track team.

h.  Valerie Gomez and Christina Epps-Chiazor suggested two possible solutions to the situation:  (1) Evie could compete on the men's team, or (2) Evie could run unattached.

i.  If Evie did not want to run on the men's team, Evie would need to conform to the following limitations: (1) Evie would have to run unattached at races, (2) she could not receive medical treatment at meets from Swarthmore College staff unless they were there to serve all athletes participating in the meet, (3) her coaches are prohibited from giving her any coaching or instruction at meets, (4) Evie would have to pay for her entry fee to these races, (5) Evie would  not allowed to eat any food that is provided for the team, and (6) Evie was prohibited from traveling with the team to any meets.

j.  The College acknowledged that Evie's wellbeing and safety at any of these meets could be an issue.  In fact, instead of implementing safeguards and protocol to protect Evie, they simply suggested that Evie reach out to the hosts of the meets regarding her safety and perhaps request an increase of public safety presence at the meets where she races. In so doing, the College demonstrated a reckless disregard for the law and Evie's safety.

k.  Instead of taking the responsibility of supporting existing state and federal law, he College merely suggested that  Evie  submit a complaint with the NCAA.

l.    The College explained that they would be allowing non-binary athletes continue

to run on the women's team who do not identify as female.

64.    On February 12, 2025, Valerie Gomez, memorialized the College's understanding

that the policy Swarthmore was implementing is discriminatory against trans women

acknowledged the damage (including severe emotional damage) that the policies enforced by the

College were causing Evie, when she wrote the  to the NCAA:

> *Many of us vehemently disagree with this transgender ban (or "sic"). Hateful, discriminatory rhetoric is bad enough, but now we are facing actual policy changes. The damage- emotional and otherwise-that this causes some of our student-athletes is immeasurable and unfair…*
>
> *As an institution and as an athletic department, we want to support all of our students to pursue healthy, positive collegiate experiences (athletic and otherwise); however, this newly updated policy literally forces us, as an NCAA member, to restrict competition for only some of our student-athletes, which quite simply does not seem fair.*
>
> *Thank you for reading my email.  If you could please provide responses to the two questions above, it would be helpful.  As you can probably tell, this particular topic hits a nerve for me and I feel very passionately about this recent update.*

Despite that powerful plea, she and the College continued to implement the discriminatory policy

of the NCAA.

65.    Swarthmore College had knowledge that they were discriminating against Evie by

allowing the NCAA to overrule Evie's right to compete as mandated under PA law.

66.    Despite this knowledge, Swarthmore College willfully violated the applicable state

laws when implementing the discriminatory policy against transgender women.

67.    On February 18, 2025, Gomez reiterated to Evie that the College will in fact be

implementing the discriminatory policy.  The College continued their position that state law does

not apply to them, and that a private entity (the NCAA) can issue a discriminatory policy and Swarthmore must follow that policy. According to Gomez:

> *We heard back from general Counsel and they, unfortunately, cannot find any applicable state law (either relevant to the birth certificate or otherwise) that might supersede the new NCAA policy, which means that the institution is in fact obligated to follow the NCAA policy. I am so very sorry as I know we were hoping for a different outcome.*

68.    In advance of the meet the next day, the College conducted a meeting with Evie to ensure that Evie was in fact aware of the discriminatory Restrictions that were in place.

69.    Swarthmore College chose to implement the NCAA Policy for transgender athletes as it relates to Evie which it insisted mandated the following actions:

a.    Swarthmore College would not provide any expenses to Evie relating to her running unattached.

b.    Evie would not be allowed to receive transportation to any races that she runs as an unattached athlete.

c.    Evie would not be allowed to wear the Swarthmore College running uniform.

d.    Evie would be prohibited from receiving athletic training support from a Swarthmore College trainer prior to and after a race in which she participates as an unattached runner, although Evie would be allowed to receive medical treatment at the race so long as the medical trainer is there to serve all participants of the meet from all of the institutions represented.

e.    The Swarthmore College coaching staff would be prohibited from providing coaching or instruction to Evie while she competes in a race as an unattached runner.

      f.     During an unattached competition, Evie would not be allowed to receive any coaching or instruction relating to technique, comments related to performance or any suggestions regarding performance. (Paragraph 61 shall be referred to collectively as "Transgender Restrictions")

70.     During this same meeting, they threatened Evie that if she where to violate any of the aforesaid Transgender Restrictions that she could lose her eligibility to run.

71.     On February 22, 2025, after the meeting, as a direct result of Swarthmore College's willful and intentional discrimination, Evie commenced engaging in self-harm, cutting herself with a razor.

72.     With no advocates for her well-being, Evie's sibling Winter stepped in to advocate for Evie. On February 24, 2025, Winter called Brad Koch, Valerie Gomez and Christina Epps-Chiazor separately and left them each a voicemail. Neither Brad nor Valerie returned Winter's voicemail. Christina Epps- Chiazor did not return Winter's voicemail until Thursday, March 13, 2025, but only after Evie had intervened and pled with the College to respond to Winter.

73.     On March 1, 2025, the Centennial Championships, a conference meet, took place. This is the conference meet. In order to participate, runners were required to achieve a qualifying time. Despite achieving the mandated qualifying time, Evie did not run in the Centennial Championships because she had not received permission to do so from the College and reasonably believed that she continued to be constrained from the competition by the College's discriminatory policy as set forth above.

74.     On March 3, 2025, Evie reached out to Valerie Gomez, Christina Epps- Chiazor and Brad Koch asking about her status on the team. In the same email, and in a last-ditch effort to get a response or acknowledgment from the College of her existence as a transgender woman and

her pain, she requested that the school facilitate a speaker to come to campus and speak on the subject of transgender athletes. She wrote:

> *Seeing Swarthmore's inadequate response and pushback to this absurd executive order…and the NCAA's ban on trans athletes, the least that could be done is educate our student body, faculty, and staff on the issues and limit the ignorance that severely harms the LGBTQ+ community.*

75.     On March 3, 2025, in response to Evie's plea for support, the College via Chrsitina Epps- Chiazor, confirmed that the college would continue implementing the restrictions that discriminated against Evie based on her sex.  The College again doubled down on their position that the NCAA policy was in fact legislation and as such, Swarthmore's only option is to implement the policy.

> *Per our [College and Evie] conversation a few weeks ago, the NCAA verbally confirmed unattached competition would be appropriate given our compliance with the legislation that I previously sent you and the coaching staff.  However, they noted they would not approve competition from a birth certificate that had been changed from its original gender assignment.*

76.     On March 7, 2025, in response to the College ignoring Winter's requests to talk with the College and advocate for their sibling, Evie reached out to Christina Epps- Chiazor expressing her emotional distress.  Evie pleaded:

> *This situation directly affects my ability to compete, and I find it unacceptable that my sibling's efforts to seek clarity and determine possible solutions have been met with silence.  I ask that you return their call at your earliest convenience so that we can have an open and transparent discussion about the reasoning behind this policy and the range of potential solutions.*

> *It is exhausting trying to balance my classwork, athletic training, responsibilities as a captain, and personal matters, let along having to fight for my rights to compete and be a member of this team.  As the Assistant Athletic Director for Compliance and Diversity and Inclusion at Swarthmore, you have a responsibility to advocate for and support me in every way that you can.*

77.    On March 21, 2025, Evie reached out to her coach, Peter Carroll.  She asked how much NCAA eligibility she had left, expressed interest in running after she graduates asked whether the outdoor season would count since she was running unattached.  Instead of helping her find the answer, Peter Carroll joined the rest of the staff at Swarthmore in ignoring and avoiding Evie replying, "The best person to talk to is Christina Chiazor who is head of compliance, and her office is across the hall from my office."

78.    On March 23, 2025, in advance of the Danny Curran Invitational, held at Widener University, Evie wrote to Timothy P. Wilson, the head coach of Widener University's Cross Country/Track & Field, requesting that Widener waive the entry fee so she could run unattached.

79.    Timothy Wilson responded the following day that they are "unable to waive the fee." As a result of Swarthmore's reckless disregard for applicable state law and discrimination against Evie because of her sex, Evie was left with no choice but to remit $44.00 to race at the Danny Curran Invitational.

80.    On March 28, 2025, excluded from the transportation offered to the other track athletes, Evie drove herself to Widener University so that she could run in the meet.  Evie had to drive herself because she was excluded from the team transportation.  Swarthmore College segregated Evie from the rest of the team by not allowing her to sit in the same van/bus.  Evie was segregated from the rest of her team because she is a transgender woman.

81.    On March 28, 2025, Evie competed in the 10,000-meter race.  She competed in a jersey that she had to buy herself, because Swarthmore College prohibited her from wearing the college uniform because she is a transgender woman. During this race, Evie wore arm sleeves to hide the razor marks on her arms because she did not want her teammates nor her parents to see the incisions that she inflicted on herself.

82.    After the race, Evie discovered her right inside ankle was bleeding, but did not request any medical care because of the discriminatory restrictions that Swarthmore implemented because she is a transgender woman.

83.    In advance of the April 4, 2025 Ursinus Festival, on March 29, 2025, Evie contacted Carl Blickle, the head coach of the men's and women's track teams at Ursinus.  Evie requested that the fee to run unattached ("Unattached Fee") be waived.

84.    On April 2, 2025, Carl Blickle responded to Evie:

> ...we cannot allow you to participate in any of the women's event[s], including the women's 3k SC [steeple chase], but we can add you to any of the men's races.  We are happy to waive your entry fee if you are still interested in entering.

85.    This caused Evie great emotional distress, embarrassment and humiliation. After receiving the e-mail, during her presentation in her seminar class, she started crying and having a panic attack.  In the middle of her presentation, she left the seminar room and sent a text message to the Track Teammates asking, "Is [there] anyone [who is] not in class and could come help me, I'm having a panic attack."

86.    Upon receiving Evie's plea for help, her friend Alina met with Evie who communicated that she wanted to kill herself.  This made Alina visibly upset and accordingly Alina stayed with Evie while another friend, Morgan, notified a counselor at that Evie needed to have an emergency meeting with a qualifes counselor.

87.    Once the meeting was set up, Alina walked Evie to Counseling and Psychological Services (CAPS) on campus and met two other track teammates, Morgan and Eli.

88.    Following those events Evie was forced to retain counsel in order to advocate for her to Ursinus and was ultimately, she permitted to run unattached at the race at Ursinus.  However,

Ursinus made it clear that she was allowed to run so long as she would not wear a Swarthmore College uniform and Swarthmore College did not pay for any expenses related to the race.

89.    In advance of the April 12, 2025, Bill Butler Invitational held at West Chester University, on March 31, 2025, Evie reached out to the director of Track & Field and Cross Country, Colin Leak.  Evie requested that the Unattached Fee be waived. After not hearing back from Colin Leak, On April 6, 2025, Evie e-mailed Colin Leak again, requesting that the fee be waived.85.    In advance of the April 18th and 19th Paul Donahue Invitational held at Widener University, on March 31, 2025, Evie contacted the head track coach of Widener University, Tim Wilson. Evie requested that the Unattached Fee be waived.

90.    On April 11, 2025, the Swarthmore College fully reinstated Evie to compete as an attached Swarthmore College athlete throughout the remaining regular season on the Swarthmore College Women's Track and Field Team.

91.    On April 11, 2025, Evie represented Swarthmore and competed in the Bill Butler Invitational held at West Chester University.  She ran the 10,000-meter women's race.

92.    On April 19, 2025, Evie represented Swarthmore and competed in the Paul Donahue Invitations at Widener University. She ran the 3,000-meter steeplechase and she placed 9th.

93.    On May 2-3, 2025, Evie represented Swarthmore and competed in the Centennial Conference Outdoor Track & Field Championships. She placed 13th in the 3,000-meter steeple chase and she placed 12th in the 10,000-meter race.

**COUNT I**
**EVIE PARTS V. SWARTHMORE COLLEGE**
**<u>20 U.S.C.A. §1681(a)</u>**

94.     Plaintiff repeats, reiterates and incorporates the averments contained in the preceding paragraphs as if full set forth herein.

95.     Defendant, Swarthmore College, is an "Educational Institution" as defined by 20 U.S.C.A. §1681 (Title IX).

96.     Defendant, Swarthmore College is a "Recipient" under Title IX and upon information and belief receives federal funds.

97.     Title IX is clear that:

> No person in the United States shall on the basis of sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance…

20 U.S.C.A. §1681(a).

98.     The Varsity Women's Track team is a "program or activity" under Title IX.

99.     Swarthmore College had knowledge that their actions were violative of Title IX, and proceeded to engage in the discriminatory conduct despite actual knowledge that they were violating the law.

100.     Swarthmore College had substantial control over their employees, specifically the other employee defendants, who engaged in implementing the discriminatory policy against Evie.

101.     Swarthmore College had substantial control over the context and setting where the discrimination occurred.

102.     In blatantly denying Evie her known rights to compete, the College's  actions constituted  outrageous, reckless and wanton misconduct in violation of state and federal law.

103.     Swarthmore College discriminated against Evie and violated Title IX when it treated Evie differently from other student-athletes because she is a transgender woman.

104.     Swarthmore College discriminated against Evie when they limited her enjoyment of the rights, privileges, advantages and opportunities when they implemented the Transgender Runner Restrictions.

105.     Swarthmore College aided the NCAA and perpetrated discrimination by providing significant assistance to the NCAA which discriminates on the bases of sex.

106.     Swarthmore College unlawfully discriminated against Evie when it denied Evie benefits and services that other students received, because she is a transgender woman.

107.     Swarthmore College denied Eve the equal opportunity by withholding coaching, travel and per diem money, medical care and equipment and supplies, because she is a transgender woman.

**WHEREFORE**, Plaintiff demands judgment against Defendant, Swarthmore College, in favor of Evelyn Parts and that this honorable Court declares that the actions of Swarthmore College violate Title IX and award all appropriate remedies allowed under the law including but not limited to punitive damages, compensatory damages and any other damages that this Court deems just and equitable.

## COUNT II
## EVIE PARTS V. ALL DEFENDANTS
## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

108.     Plaintiff repeats, reiterates and incorporates the averments contained in the preceding paragraphs as if full set forth herein.

109.     Defendants, individually and collectively, acted with a reckless indifferent to Evie's rights as a woman.

110.     Defendants individually exhibited outrageous behavior and each of their egregious conduct shows a reckless indifference to Evie's rights as a woman.

111.    Defendants individually and collectively causes Evie great emotional distress that was and is so severe that reasonable person could be expected to endure it.

**WHEREFORE**, Plaintiff demands judgment against Defendants, in favor of Evelyn Parts and that this honorable Court declares that the actions of Swarthmore College violate Title IX and award all appropriate remedies allowed under the law including but not limited to punitive damages, compensatory damages and any other damages that this Court deems just and equitable.

**COUNT III**
**EVIE PARTS V. NCAA**
**AIDING AND ABETTING**
**20 U.S.C.A. §1681**

112.    Plaintiff repeats, reiterates and incorporates the averments contained in the preceding paragraphs as if full set forth herein.

113.    Defendant, NCAA, aided and abetted Swarthmore College in violating Title IX.

114.    Swarthmore College violated Title IX when it implemented the Transgender Restrictions.

115.    Swarthmore College sought guidance and clarification on how to effectively implement the Transgender Restrictions.

116.    The NCAA provided guidance to Swarthmore College on how to implement the violative restrictions.

**WHEREFORE**, Plaintiff demands judgment against Defendants, in favor of Evelyn Parts and that this honorable Court declares that the actions of Swarthmore College violate Title IX and the NCAA aided and abetted Swarthmore College in violating Title IX and award all appropriate remedies allowed under the law including but not limited to punitive damages, compensatory damages and any other damages that this Court deems just and equitable.

**COUNT IV**
**EVIE PARTS V. NCAA**
**AIDING AND ABETTING**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

117.    Plaintiff repeats, reiterates and incorporates the averments contained in the preceding paragraphs as if full set forth herein.

118.    Swarthmore College, individually and collectively, acted with a reckless indifferent to Evie's rights as a woman.

119.    Swarthmore College exhibited outrageous behavior and each of their egregious conduct shows a reckless indifference to Evie's rights as a woman.

120.    Swarthmore College individually and collectively causes Evie great emotional distress that was and is so severe that reasonable person could be expected to endure it.

121.    The NCAA aided and abetted Swarthmore College in effectuating the infliction of emotional distress.

122.    The NCAA actively participated in the infliction of emotional distress to Evie.

**WHEREFORE**, Plaintiff demands judgment against Defendants, in favor of Evelyn Parts and that this honorable Court declares that the actions of Swarthmore College intentionally inflicted emotional distress and the NCAA aided and abetted Swarthmore College in inflicting such emotional distress and award all appropriate remedies allowed under the law including but not limited to punitive damages, compensatory damages and any other damages that this Court deems just and equitable.

**COUNT V**
**EVIE PARTS V. ALL DEFENDANTS**
**CIVIL CONSPIRACY**

123.    Plaintiff repeats, reiterates and incorporates the averments contained in the preceding paragraphs as if full set forth herein.

124.     Under Pennsylvania law, a civil conspiracy requires that showing of two or more persons acting with a common purpose to do an unlawful act, and an over act done in pursuance of the common purpose, and actual legal damage.

125.     The defendants acted with the common purpose of unlawfully depriving Evie of equal opportunity to the benefits and services of the College.

126.     The defendants acted with the common purpose and implemented the Transgender Restrictions that resulted in physical, emotional and financial damage.

**WHEREFORE**, Plaintiff demands judgment against Defendants, in favor of Evelyn Parts and that this honorable Court declares that the actions of Swarthmore College violate Title IX and award all appropriate remedies allowed under the law including but not limited to punitive damages, compensatory damages and any other damages that this Court deems just and equitable.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Evie Parts, respectfully request that this Court award:

1.     Reimbursement all monies spent by Plaintiff due to the discriminatory actions of defendants.

2.     Award consequential and compensatory damages, including any and all recoverable economic and non-economic damages as a result of Defendants' actions in an amount to be determined at trial;

3.     Award punitive damages to Plaintiff, as allowed, in an amount to be determined at trial;

4.     Award pre-judgment and post-judgment interest as permitted by law;

5.     Award reasonable attorneys' fees and costs; and

6.    Award such other, additional and separate relief as the case may require and/or that is deemed just and proper  under the circumstances.


                                        **CIRILLI, LLC**

                                        By:_____
                                        Susan M. Cirilli, Esq.
                                        (Pa. Atty I.D. No. 313519)
                                        100 Church Street, Suite 800
                                        New York, New York 10007
                                        susie@cirilli.com
                                        646.992.3564

Dated: 11.7.25


                                        **SPECTOR GADON ROSEN &
                                        VINCI, PC**

                                        By:____s/ _Alan B. Epstein_____

                                        Alan Epstein, Esq.
                                         (Pa.Atty. I.D. No. 02346
                                        One Logan Square, Suite 1800
                                        130 N. 18th Street
                                        Philadelphia, PA 19103


Dated: November 7, 2025