**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EVELYN "EVIE" PARTS<br>*Plaintiff*,<br><br>v.<br><br>SWARTHMORE COLLEGE,<br>PETER CARROLL, VALERIE GOMEZ<br>BRAD KOCH, CHRISTINA EPPS-<br>CHIAZOR, and NATIONAL<br>COLLEGIATE ATHLETIC<br>ASSOCIATION<br>*Defendants*. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br><br>Case 2:25-cv-04702-CMR<br><br><br><br>: |

**<u>PROPOSED ORDER</u>**

AND NOW, on this ________ day of __________________________, 2025, upon consideration of Defendants Swarthmore College, Peter Carroll, Valerie Gomez, Brad Koch, and Christina Epps-Chiazor Motion to Dismiss and accompanying Memorandum of Law incorporated therein, IT IS HEREBY ORDERED that Defendants Swarthmore College, Peter Carroll, Valerie Gomez, Brad Koch, and Christina Epps-Chiazor's Motion to Dismiss is GRANTED pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Second Amended Complaint is DISMISSED WITH PREJUDICE.

BY THE COURT:

_________________________________________
Rufe, J.



336101326v1

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EVELYN "EVIE" PARTS<br>*Plaintiff*,<br><br>v.<br><br>SWARTHMORE COLLEGE, PETER CARROLL, VALERIE GOMEZ BRAD KOCH, CHRISTINA EPPS-CHIAZOR, and NATIONAL COLLEGIATE ATHLETIC ASSOCIATION<br>*Defendants*. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case 2:25-cv-04702-CMR |

**DEFENDANTS, SWARTHMORE COLLEGE, PETER CARROLL, VALERIE GOMEZ, BRAD KOCH, AND CHRISTINA EPPS-CHIAZOR'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)**

Defendants Swarthmore College, Peter Carroll, Valerie Gomez, Brad Koch, and Christina Epps-Chiazor hereby moves to dismiss Plaintiff's Second Amended Complaint (Doc. No. 30) pursuant to Rule 12(b)(6). The reasons supporting this Motion are fully set forth in the accompanying Memorandum of Law, which is incorporated herein as though fully set forth in this Motion.

WHEREFORE, Defendants Swarthmore College, Peter Carroll, Valerie Gomez, Brad Koch, and Christina Epps-Chiazor respectfully requests that the Court grant their Motion to Dismiss.

Dated: October 20, 2026

Respectfully submitted,



Michael E. Baughman
Attorney I.D. No. 78690
TROUTMAN PEPPER LOCKE LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4964
Email: michael.baughman@troutman.com

Judah H. Rome (pro hac vice)
TROUTMAN PEPPER LOCKE LLP
2800 Financial Plaza
Providence, RI 02903
Telephone: (401) 276-6433
Email: judah.rome@troutman.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of October 2026, I caused a true and correct copy of the foregoing *Defendants' Motion to Dismiss Amended Complaint* to be served via CM/ECF upon all parties entitled to notice.

*/s/ Michael E. Baughman*
Michael E. Baughman

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EVELYN "EVIE" PARTS | : | |
| | : | |
| *Plaintiff*, | | |
| | : | |
| v. | : | Case 2:25-cv-04702-CMR |
| | : | |
| SWARTHMORE COLLEGE, | : | |
| PETER CARROLL, VALERIE GOMEZ | : | |
| BRAD KOCH, CHRISTINA EPPS- | : | |
| CHIAZOR, and NATIONAL | : | |
| COLLEGIATE ATHLETIC | : | |
| ASSOCIATION | : | |
| | : | |
| *Defendants*. | | |

---

**DEFENDANTS, SWARTHMORE COLLEGE, PETER CARROLL, VALERIE GOMEZ, BRAD KOCH, AND CHRISTINA EPPS-CHIAZOR'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

---

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. PROCEDURAL HISTORY ..... 3

IV. STANDARD OF REVIEW ..... 4

V. ARGUMENT ..... 4

- A. Plaintiff's Title IX Claim is Precluded by Binding Supreme Court Precedent ..... 4
- B. Plaintiff's Claims Under the PHRA and PFEOA Fail for the Same Reasons ..... 6
- C. Plaintiff's Common Law Claims Fail ..... 10

VI. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alers v. City of Philadelphia*,
919 F. Supp. 2d 528 (E.D. Pa. 2013) ....................9

*Andrews v. City of Philadelphia*,
895 F.2d 1469 (3d Cir. 1990), *superseded in part by statute*, Civil ....................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................4

*Bostock v. Clayton County*,
590 U.S. 644 (2020) ....................5, 8, 9

*Boyanowski v. Cap. Area Intermediate Unit*,
215 F.3d 396 (3d Cir. 2000) ....................11, 12

*Britt v. Chestnut Hill Coll.*,
632 A.2d 557 (Pa. Super. 1993) ....................11

*Chmill v. City of Pittsburgh*,
412 A.2d 860 (Pa. 1980) ....................7

*Commerce Bank/Pa. v. Union Nat'l Bank*,
911 A.2d 133 (Pa. Super. 2006) ....................12

*Cooker v. Meadowood Corp.*,
No. 21-2667, 2021 WL 4262338 (E.D. Pa. Sept. 20, 2021) ....................10

*Davis v. Wigen*,
82 F.4th 204 (3d Cir. 2023) ....................10, 11

*Fogelman v. Mercy Hosp.*,
283 F.3d 561 (3d Cir. 2002) ....................7

*Goldstein v. Phillip Morris, Inc.*,
854 A.2d 585 (Pa. Super. 2004) ....................11

*Hoy v. Angelone*,
720 A.2d 745 (Pa. 1998) ....................10



334841279v3

*Imler v. Hollidaysburg Am. Legion Ambulance Serv.*,
731 A.2d 169 (Pa. Super. Ct. 1999)....7

*in*, *Moody v. Atl. City Bd. of Educ.*,
870 F.3d 206 (3d. Cir. 2017)....11

*Jordan v. Pa. State Univ*.,
276 A.3d 751 (Pa. Super. 2022)....10

*Kelly v. Jones*,
148 F. Supp.3d 395 (E.D. Pa. 2015)....10

*Little v. Hecox, et al*
(No 24-38)....3

*McKeeman v. Corestates Bank, N.A.*,
751 A.2d 655 (Pa. Super. 2000)....11

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
193 F.3d 781 (3d Cir. 1999)....11

*Sampathkumar v. Chase Home Fin., LLC*,
241 A.3d 1122 (Pa. Super. 2020)....12

*Strickland v. Univ. of Scranton*,
700 A.2d 979 (Pa. Super. 1997)....11

*Weir v. University of Pitt.*,
2022 WL 17095566 (W.D. Pa. Aug. 18, 2022)....7

*West Virginia v. B.P.J.*,
146 S. Ct. 2356 (June 30, 2026)....1, 3, 4, 5, 6, 8, 9

*Williams v. Pa. Human Rels. Comm'n*,
No. 14–CV–1290, 2016 WL 6834612 (W.D. Nov. 21, 2016)....9

*Zurchin v. Ambridge Area Sch. Dist.*,
300 F. Supp. 3d 681 (W.D. Pa. 2018)....9

**Statutes**

20 U.S.C. § 1681(a), (2) Title IX....1, 3, 4, 5, 6, 7, 8, 9, 11

PFEOA, 24 Pa. Stat. Ann. §§ 5001–5010....4, 6, 7, 8, 9

PHRA, 43 Pa. Stat. Ann. §§ 951-963....3, 6, 7, 8, 9

**Other Authorities**

16 Pa Code. § 41.201 ....................................................................................................7

16 Pa. Code. § 41.206 ....................................................................................................8

22 Pa. Code § 32.3(2)(ii)....................................................................................................8

Fed. R. Civ. P. 8(a)(2)....................................................................................................4

Rule 12(b)(6)....................................................................................................4

Pennsylvania Human Relations Commission Guidance On Discrimination On The Basis Of Sex Under The Pennsylvania Human Relations Act Available at: https://www.pa.gov/content/dam/copapwp-pagov/en/phrc/non-discrimination/APPROVED%20Sex%20Discrimination%20Guidance%20PHRA.pdf. 8, 9

## I. INTRODUCTION

Plaintiff, a transgender woman and former student-athlete at Swarthmore College ("Swarthmore" or the "College"), claims Swarthmore violated Title IX and Pennsylvania state law by following the National Collegiate Athletic Association's ("NCAA") Participation Policy for Transgender Student Athletes (the "Participation Policy"). The NCAA policy prohibited her, as a transgender woman, from competing as a member of Swarthmore's Women's Track and Field Team ("Track Team"). Because Swarthmore did not violate the law in following the Participation Policy, the Second Amended Complaint should be dismissed with prejudice.

Plaintiff's Title IX claim fails because the United States Supreme Court unanimously held in *West Virginia v. B.P.J.*, 146 S. Ct. 2356 (June 30, 2026) that Title IX does not prohibit separate sports teams for biological women. The Supreme Court's holding – which made explicit reference to the Participation Policy – governs here and compels dismissal. The Pennsylvania statutory discrimination claims fail because, under binding case law, Pennsylvania looks to federal law in interpreting its discrimination statutes. There is nothing to suggest that the Pennsylvania Supreme Court would deviate from that long-standing principle by rejecting the Supreme Court's unanimous holding in *B.P.J.* in applying Pennsylvania's corollary discrimination statutes. Plaintiff's common law claims fail because Plaintiff has not and cannot plead that Swarthmore engaged in intentionally outrageous conduct nor the elements of a civil conspiracy.

Whatever one's opinion of the Participation Policy, as a member of the NCAA Swarthmore was bound to follow it. The Policy is not illegal, so Swarthmore cannot be sued for complying with it. The Second Amended Complaint should therefore be dismissed.

## II. FACTUAL BACKGROUND[1]

Plaintiff is a transgender woman and was a student at Swarthmore until she graduated in May 2025. *See* Second Amended Complaint[2] (Doc. No. 30) ¶ 40. In Fall 2020, during her freshman year, she was a member of Swarthmore's Women's Cross Country Team. *Id.* ¶ 42. Plaintiff did not compete again for the Cross Country or Track Teams until the fall of 2023, first due to COVID-related shutdowns, and then from Fall 2021 through Fall 2023, for medical reasons. *Id.* ¶¶ 43-47. Plaintiff continued to be a member of and compete for the Track Team through the beginning of the 2024-25 winter indoor season. *Id.* ¶¶ 48-50, 52.

On February 6, 2025, the NCAA issued the Participation Policy, which banned transgender women from competing on women's teams. *Id.* ¶ 4. The NCAA required that member schools, such as Swarthmore, adhere to the NCAA Participation Policy, and if schools did not, they could be sanctioned, thereby resulting in negative consequences to other student athletes. *Id.* ¶ 6. Swarthmore and its Athletics Staff, understanding that the Participation Policy was challenging for Plaintiff, attempted to work with Plaintiff to allow her to continue to compete, but ultimately concluded that it was obligated to follow the Participation Policy so as to protect the opportunity for other members of the Women's Track Team to compete. *Id.* ¶¶ 59-61, 65. Accordingly, Plaintiff remained a member of the Women's Track Team but was not allowed to compete in women's athletic events while representing Swarthmore for a portion of the Spring 2025 season. *Id.* ¶ 68.

---

[1] For the purpose of this Motion, the facts pled in the Second Amended Complaint are presumed to be true.

[2] While ECF Doc. No. 30 is labeled an "Amended Complaint" it is, in fact, Plaintiff's Second Amended Complaint.

## III. PROCEDURAL HISTORY

Plaintiff filed her original complaint on August 14, 2025, asserting three claims against Swarthmore for (1) violating Title IX, 20 U.S.C. § 1681(a), (2) intentional infliction of emotional distress under Pennsylvania law, and (3) civil conspiracy under Pennsylvania law. (Doc. No. 1). The latter two claims were also filed against the NCAA. Both defendants filed motions to dismiss on October 27, 2025. Rather than respond to the motions, Plaintiff filed an Amended Complaint, which added two counts of "aiding and abetting" against the NCAA. (Doc. No. 18). Both defendants filed renewed motions to dismiss on December 22, 2025.

Meanwhile, the United States Supreme Court had granted certiorari in two cases to decide whether Title IX prohibits schools from disallowing students assigned male at birth from competing on women's sports teams – the precise issue presented in this case. (*Little v. Hecox, et al.* (No. 24-38) and *West Virginia v. B.P.J.* by Jackson (No. 24-43)). The parties therefore stipulated to stay the case pending the Supreme Court's decision in those cases, which this Court approved on January 21, 2026. (Doc. No. 24).

On June 30, 2026, the Supreme Court decided *West Virginia v. B.P.J.*, 146 S. Ct. 2356 (June 30, 2026). The Court unanimously held that precluding transgender women from competing on sports teams designated for biological females does not violate Title IX. *Id.* at 2371-2373; *id.* at 2401-2402 (Sotomayor, J., concurring in part and dissenting in part). The majority opinion also found that the same conduct does not violate Equal Protection under the Fourteenth Amendment. *Id.*

On July 17, 2026, the Parties stipulated that Plaintiff may file a Second Amended Complaint. (Doc. No. 28). Plaintiff filed her Second Amended Complaint on September 4, 2026. Notwithstanding the clear holding of *B.P.J.*, the Second Amended Complaint continues to assert claims under Title IX. She also brings claims under the Pennsylvania Human Relations

Act ("PHRA"), the Pennsylvania Fair Educational Opportunities Act ("PFEOA"), and aiding and abetting violations of those statutes, as well as common law claims. (Doc. No. 30). Swarthmore now moves to dismiss the Second Amended Complaint.

## IV. STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion, the Court must accept the facts pleaded in the complaint as true, but it need not accept legal conclusions masquerading as facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## V. ARGUMENT

### A. Plaintiff's Title IX Claim is Precluded by Binding Supreme Court Precedent

The Supreme Court decided the issue in this case in June. Excluding a transgender female from competing on a women's sports team does not violate Title IX. In *West Virginia v. B.P.J.*, 146 S. Ct. 2356 (June 30, 2026), plaintiff challenged two state statutes that prohibited biological males from competing on women's sports teams. *B.P.J.*, 146 S. Ct. at 2369. The Court observed that those statutes were consistent with the rulings of a number of sports organizations, including the NCAA's Participation Policy at issue here: "In 2025, the NCAA prohibited biological male students, including those who identify as female and have taken hormones, from competing on women's teams." *Id.* at 2368. The Supreme Court held that these laws and policies do not violate

Title IX: "The question is whether Title IX permits schools to maintain women's and girls' sports teams for biological females. The answer is yes." *Id.* at 2371.

The Supreme Court observed that "Title IX's implementing regulations expressly permit schools to maintain separate teams for 'members of each sex,'" and that "[t]he term 'sex' in the 1972 Title IX statute, the 1974 Javits Amendment, and the 1975 regulations cannot plausibly be interpreted to refer to anything other than biological sex." *Id.* The Court also held that "[s]eparate sports teams for biological males and biological females to play on women's and girl's teams are reasonable: Given the inherent physical difference between the sexes, allowing only biological females to play on women's and girls' teams can reduce the risk of physical injury and ensure fair competition." *Id.* at 2372. Finally, the Supreme Court rejected the notion that its decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020), which held that Title VII prohibits firing an employee "for being gay or transgender," compelled a different result. *B.P.J.*, 146 S. Ct. at 2373. That was because (1) the Title IX and Title VII statutory schemes are not the same and (2) sports are different than employment and excluding participation in sports is not the same as firing an employee because of their gender identity. *Id.*; *see also id.* at 2383 (Gorsuch, J., concurring) (author of *Bostock* opinion explaining that firing someone for their gender identity is clearly "discrimination," but sponsoring sports teams only for biological females is not). While Justices Sotomayor, Kagan, and Jackson dissented from the Court's analysis under the Fourteenth Amendment, they ***agreed*** that the statutes did not violate Title IX. *Id.* at 2401-2402 (Sotomayor, J., concurring in part and dissenting in part).

There is no daylight between the Supreme Court's holding in *B.P.J.* and the Plaintiff's claims here. Plaintiff alleges that Swarthmore violated Title IX because it "chose to follow the NCAA . . . when it implemented a policy that segregated Evie from her teammates" by not allowing

her the benefits of team competition "offered to other women varsity athletes." Second Am. Compl. at ¶ 6; *see also id.* at ¶ 103 (alleging Swarthmore "treated Evie differently from other student-athletes because she is a transgender woman," by following the NCAA's Participation Policy). The Supreme Court has squarely held that precisely such conduct does not violate Title IX. It even specifically referenced the NCAA's Participation Policy in its decision. There is no colorable basis for Plaintiff to proceed on her Title IX claim, and the Court should dismiss it.[3]

### B. Plaintiff's Claims Under the PHRA and PFEOA Fail for the Same Reasons

Plaintiff's claims under the PHRA (43 Pa. Stat. Ann. §§ 951-963) and the PFEOA (24 Pa. Stat. Ann. §§ 5001–5010) fail because the Pennsylvania Supreme Court and the Third Circuit have repeatedly held that those statutes should be read consistently with federal law. There is no authority in Pennsylvania law that would invalidate a rule prohibiting transgender athletes from competing on women's sports teams, and there is no reason to believe that the Pennsylvania Supreme Court would deviate from the unanimous holding of the Supreme Court in *B.P.J.* to create an inconsistency between federal and state law on the issue.

Section 953 of the PHRA protects an individual's right "to obtain all the accommodations, advantages, facilities and privileges of any public accommodation … without discrimination because of … sex" and Section 955(a) makes it unlawful for "any employer because of … sex … to refuse to hire or employ or contract with, or to bar or to discharge from employment such

[3] As noted in Swarthmore's Motion to Dismiss the First Amended Complaint, because Title IX was passed under the Constitution's Spending Clause, the statute would require a clear statement that conduct is prohibited before a school can be held liable in money damages. (Doc. No. 22-1 at 10-16). Given the Supreme Court's unanimous decision that the conduct is permitted, not prohibited, by Title IX, there can obviously be no such "clear statement." *See B.P.*J., 146 S. Ct. at 2382-83 (Gorsuch, J., concurring) (relying on the clear statement rule as an additional reason that the defendants could not be held liable under Title IX).

individual … or to otherwise discriminate against such individual … with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual … is the best able and most competent to perform the services required." Section 5004(a)(3) of the PFEOA makes it unlawful to "expel, suspend, punish, deny facilities or otherwise discriminate against any student because of race, color, ancestry, national origin, sex, handicap or disability." The Pennsylvania Human Relations Commission has consistently stated that the PHRA and the PFEOA should be "interpreted and applied consistently" with each other. 16 Pa. Code § 41.201.

It is well established in Pennsylvania that the PHRA and the PFEOA are to be interpreted consistently with federal anti-discrimination laws. The Third Circuit has so held: "the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fogelman v. Mercy Hosp.*, 283 F.3d 561, 567 (3d Cir. 2002). The Pennsylvania Supreme Court has said the same: "the Human Relations Act should be construed in light of 'principles of fair employment law which have emerged relative to the federal (statute) . . . .'" *Chmill v. City of Pittsburgh*, 412 A.2d 860, 871 (Pa. 1980); *see also Weir v. University of Pitt.*, 2022 WL 17095566 (W.D. Pa. Aug. 18, 2022) (noting that PFEOA is interpreted consistent with federal anti-discrimination statutes); *Imler v. Hollidaysburg Am. Legion Ambulance Serv.*, 731 A.2d 169, 173 (Pa. Super. Ct. 1999) ("The PHRA and ADA are interpreted in a co-extensive manner."). The case law thus reflects an important policy: to avoid imposing conflicting obligations between state and federal law, state discrimination statutes were meant to be co-extensive with federal law absent a clear legislative intent to do otherwise.

The PHRA and PFEOA's statutory provisions do not meaningfully differ from Title IX – they, like Title IX, prohibit discrimination because of "sex," which is not further defined by the

statute. There is no legislative history or case law suggesting that federal and state law were meant to differ on the treatment of transgender athletes participating in sports. In light of the clear and consistent holdings of the Third Circuit, the Pennsylvania Courts, and the PHRC itself, there is no doubt that the Pennsylvania Supreme Court would follow *B.P.J.* in interpreting the PHRA and PFEOA and find that they do not prohibit having separate sports teams that are limited to biological women.[4]

Plaintiff will likely point to the fact that the PHRC recently issued regulations which define "sex" under the PHRA and PFEOA to include gender identity and gender expression. 16 Pa. Code § 41.206. Putting aside that those regulations were passed before *B.P.J.*, and are currently being challenged in litigation, the PHRC guidance accompanying the regulations (the "Guidance") makes clear that they were adopted to make Pennsylvania law consistent, not inconsistent, with federal law.[5] The PHRC Guidance states that the changes were made in light of "evolving case law of interpretations of discrimination 'because of . . . sex' under Title VII" (i.e., *Bostock*). The purpose was to make Pennsylvania ***consistent*** with federal law: "Pennsylvania courts have consistently held that the PHRA is to be interpreted consistently with federal anti-discrimination law." *Id*.

[4] Just as the Supreme Court held that Title IX's definition of "sex" could not reasonably be interpreted as prohibiting separate sports teams based on biological sex based on history and practice, so too in Pennsylvania it is legal to have separate teams for biological men and women. *See*, *e.g.*, 22 Pa. Code § 32.3(2)(ii) (allowing separate physical education classes for men and women).

[5] Pennsylvania Human Relations Commission Guidance On Discrimination On The Basis Of Sex Under The Pennsylvania Human Relations Act Available at: https://www.pa.gov/content/dam/copapwp-pagov/en/phrc/non-discrimination/APPROVED%20Sex%20Discrimination%20Guidance%20PHRA.pdf.

The regulations are consistent with federal law because *Bostock* remains good law. *B.P.J.* distinguished *Bostock*, it did not reject it:

> In the workplace, Title VII generally requires that men and women be treated without regard to their sex. In the sports context, by contrast, Title IX authorizes separate men's and women's sports teams. And because Title IX permits separate teams, the only question here is whether schools may limit women's and girls' sports to biological females – a question not addressed by *Bostock* as the Court expressly noted.

*B.P.J.*, 146 S. Ct. at 2373; *see also id.* at 2384 (Gorsuch, J., concurring).

Because the Pennsylvania regulations were intended to follow *Bostock* and because the Supreme Court has said that its decision in *B.P.J.* is consistent with *Bostock*, the regulations should be read consistently with federal law (as they were intended): firing someone for being transgender may violate the law, but segregating sports teams based on biological sex does not.

Like the Supreme Court's statement that the analysis is context specific, the Guidance states that its regulations are "not intended to impose hard and fast rules that must be absolutely applied without regard to the specific facts involved."[6] The Supreme Court concluded that "[s]eparate sports teams for biological males and biological females to play on women's and girl's teams are reasonable" based on the sports context. *B.P.J.*, 146 S. Ct. at 2372. This reasoning fits squarely within the Guidance's flexible approach.

The Supreme Court unanimously held that Title IX does not prohibit schools from limiting participation in women's sports to biological women. The Pennsylvania Courts, the Third Circuit, and the PHRC have repeatedly emphasized that Pennsylvania's interpretation of the PHRA and the PFEOA will follow federal law. There is no legislation or case law that suggests Pennsylvania

---

[6] See, PHRC Guidance, supra note 5 at 1.

would do anything other than follow the same logic of the United States Supreme Court in *B.P.J.* Counts VI, VII, IX,[7] X, and XI should, therefore, be dismissed.

### C. Plaintiff's Common Law Claims Fail

Plaintiff's common law claims fail because Swarthmore's conduct was legal and was not extreme and outrageous.

***First***, as to the intentional infliction of emotional distress claim, it is not firmly established that the Pennsylvania Supreme Court even recognizes this claim. *See Kelly v. Jones*, 148 F. Supp. 3d 395, 405 n.2 (E.D. Pa. 2015) (describing intentional infliction of emotional distress as a "hypothetical tort" in light of the Pennsylvania Supreme Court's continued failure to recognize facts sufficient to state a claim). "Although such claims are often brought, and although numerous Pennsylvania decisions have discussed the doctrine, it is difficult to find a Pennsylvania case where the facts alleged were deemed sufficient." *Cooker v. Meadowood Corp.*, No. 21-2667, 2021 WL 4262338, at *4 (E.D. Pa. Sept. 20, 2021). Where available, the plaintiff must show intentional or reckless, extreme and outrageous conduct that causes severe emotional distress. *See Jordan v. Pa. State Univ.*, 276 A.3d 751, 775 (Pa. Super. 2022). To adequately plead such a claim, the plaintiff

[7] Count IX purports to be an "employment" claim. It is unclear whether this was a drafting error, but there is clearly no basis for such a claim. Plaintiff fails to allege that Swarthmore discriminated against her by taking an adverse employment action with respect to any employment relationship. "An adverse employment action is one that alters the terms, conditions or privileges of employment and includes actions that are more than trivial or minor changes in an employee's working conditions, such as suspension without pay and transfer to an undesirable position." *Zurchin v. Ambridge Area Sch. Dist.*, 300 F. Supp. 3d 681, 689 (W.D. Pa. 2018) (quoting *Williams v. Pa. Human Rels. Comm'n*, No. 14–CV–1290, 2016 WL 6834612, at *16 (W.D. Pa. Nov. 21, 2016)). A complainant must prove that the adverse employment action was motivated by discrimination. *See Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 543 (E.D. Pa. 2013) (holding that discrimination must be a "substantial motivating factor in the adverse employment action"). Plaintiff says that she worked as a student employee in the McCabe Library, but she has not alleged that she suffered any discrimination in the workplace or suffered any adverse employment action. Instead, the alleged discrimination arises out of her not being allowed to compete in women's track and field events as a representative of Swarthmore.

must allege "behavior that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Davis v. Wigen*, 82 F.4th 204, 216 (3d Cir. 2023) (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)). Courts determine as a matter of law whether alleged conduct is sufficiently extreme or outrageous to allow recovery. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1487 (3d Cir. 1990), *superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072, *as recognized in Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206 (3d Cir. 2017).

None of the alleged conduct here could possibly be "regarded as atrocious" or "utterly intolerable in a civilized society." *Davis*, 82 F.4th at 216. Rather, Plaintiff alleges that Defendants complied with the NCAA's Participation Policy, which applied to all NCAA member institutions nationwide. That is not an "atrocious" or "intolerable" act. It is something that all nine justices of the United States Supreme Court said is permitted by Title IX. Courts regularly dismiss intentional infliction of emotional distress claims premised on more egregious allegations. *See, e.g., Britt v. Chestnut Hill Coll.*, 632 A.2d 557, 560–62 (Pa. Super. 1993) (claims that a college professor encouraged another student to sexually harass plaintiff and then took actions to sabotage plaintiff's reputation were not sufficiently severe and outrageous to state a claim); *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. 1997) (improper termination of an employee was not sufficiently severe and outrageous).

***Second***, the civil conspiracy claim fails. "In order to state a civil action for conspiracy, a complaint must allege: 1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done in pursuance of the common purpose; and 3) actual legal damage." *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. 2004) (quoting *McKeeman v. Corestates Bank, N.A.*,

751 A.2d 655, 660 (Pa. Super. 2000)). A civil conspiracy may not exist without an underlying tort. *See Boyanowski v. Cap. Area Intermediate Unit*, 215 F.3d 396, 405 (3d Cir. 2000) (citing *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 & n.7 (3d Cir. 1999) (collecting cases)). Moreover, "the failure of the underlying [tort] claim" is sufficient "as a matter of law to vitiate the finding of civil conspiracy *notwithstanding* the fact that it had been successfully pled as an independent cause of action." *Boyanowski*, 215 F.3d at 406. Because Plaintiff must maintain a claim for an underlying tort, if this Court dismisses the claim for intentional infliction of emotional distress, it must also dismiss Plaintiff's civil conspiracy claim. *See id*.

For a plaintiff to prevail on a claim for civil conspiracy, the plaintiff must show that the defendants "acted in concert to commit an unlawful act" and "that they acted with malice." *See Sampathkumar v. Chase Home Fin., LLC*, 241 A.3d 1122, 1148 (Pa. Super. 2020) (quoting *Commerce Bank/Pa. v. Union Nat'l Bank*, 911 A.2d 133, 143 (Pa. Super. 2006)). As discussed above, Defendants' conduct was not unlawful. Finally, Plaintiff's Second Amended Complaint fails to allege that Defendants and the NCAA acted in concert with each other. Accordingly, Plaintiff's civil conspiracy claim fails as a matter of law, and this Court should dismiss Count III.

## VI. CONCLUSION

For the foregoing reasons, Defendants Swarthmore College, Peter Carroll, Valerie Gomez, Brad Koch, and Christina Epps-Chiazor respectfully request that this Court grant their Motion to Dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted.

Dated: October 20, 2026

Respectfully submitted,

_______________________________
Michael E. Baughman
Attorney I.D. No. 78690
TROUTMAN PEPPER LOCKE LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4964
Email: michael.baughman@troutman.com

Judah H. Rome (pro hac vice)
TROUTMAN PEPPER LOCKE LLP
2800 Financial Plaza
Providence, RI 02903
Telephone: (401) 276-6433
Email: judah.rome@troutman.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of October 2026, I caused a true and correct copy of the foregoing *Defendants' Memorandum of Law in Support of Motion to Dismiss Second Amended Complaint* to be served via CM/ECF upon all parties entitled to notice.

*/s/ Michael E. Baughman*
Michael E. Baughman