**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EVELYN "EVIE" PARTS,<br><br>PLAINTIFF,<br>v.<br><br>SWARTHMORE COLLEGE, PETER CARROLL, VALERIE GOMEZ, BRAD KOCH AND CHRISTINA EPPS-CHIAZOR and NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>DEFENDANTS. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br>No. 2:25-CV-04702-CMR |

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

I. INTRODUCTION ... 1
II. PROCEDURAL HISTORY AND STATEMENT OF ALLEGED FACTS ... 2
III. LEGAL STANDARD ... 4
IV. ARGUMENT ... 4
A. Plaintiff Fails to State a Claim for Aiding and Abetting a Title IX Violation ... 4
B. Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress ... 6
C. Plaintiff Fails to State a Claim for Aiding and Abetting IIED ... 8
D. Plaintiff Fails to State a Claim for Civil Conspiracy ... 9
E. Plaintiff Fails to State a Claim Against the NCAA for Aiding and Abetting PFEOA and PHRA Violations ... 10
V. THE CLAIMS AGAINST THE NCAA SHOULD BE DISMISSED WITH PREJUDICE ... 13
VI. CONCLUSION ... 13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Angus v. Shiley, Inc.*,
989 F.2d 142 (3d Cir. 1993)....................7, 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*Austin v. Hill*,
No. CIV.A. 11-2847, 2014 WL 1386338 (E.D. Pa. Apr. 9, 2014)....................2, 8

*Banyas v. Lower Bucks Hosp.*,
293 Pa. Super. 122 (1981)....................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4

*Bonilla v. City of Allentown*,
359 F. Supp. 3d 281 (E.D. Pa. 2019)....................2, 13

*Bostock v. Clayton County*,
*590 U.S. 644 (2020)*....................11, 12

*Bro-Tech Corp. v. Thermax, Inc.*,
651 F. Supp. 2d 378 (E.D. Pa. 2009)....................2, 10

*Cannon v. Univ. of Chi.*,
441 U.S. 677 (1979)....................5

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994)....................5, 6, 9

*Chmill v. City of Pittsburgh*,
412 A.2d 860 (Pa. 1980)....................11

*Chuy v. Philadelphia Eagles Football Club*,
595 F.2d 1265 (3d Cir. 1979)....................7

*Cureton v. National Collegiate Athletic Ass'n*,
198 F.3d 107 (3d Cir. 1999)....................12

*Davis v. Wigen*,
82 F.4th 204 (3d Cir. 2023)....................1, 6, 7

*Dempsey v. Bucknell Univ.*,
No. 4:11-cv-1679, 2012 WL 1569826 (M.D. Pa. May 3, 2012)....................10

*Dichter v. City of Phila.*,
No. 14-5611, 2015 WL 1511028 (E.D. Pa. Apr. 1, 2015) .....9, 10

*Fitzgerald v. Barnstable Sch. Comm.*,
555 U.S. 246 (2009) .....6

*Fogelman v. Mercy Hosp., Inc.*,
283 F.3d 561 (3d Cir. 2002) .....11

*Gaines v. National Collegiate Athletic Ass'n*,
No. 1:24-cv-01109 (N.D. Ga. Sept. 28, 2026), ECF No. 196 .....1, 5, 6

*Gen. Refractories Co. v. Fireman's Fund Ins. Co.*,
337 F.3d 297 (3d Cir. 2003) .....9

*Geraghty v. E. Bradford Twp.*,
584 F. Supp. 3d 10 (E.D. Pa. 2022) .....7

*Hawley v. Salamon*,
No. 3:25-CV-0728, 2025 WL 2154362 (M.D. Pa. July 29, 2025) .....2, 9

*Hollinghead v. City of York*,
912 F. Supp. 2d 209 (M.D. Pa. 2012) .....13

*Hoy v. Angelone*,
554 Pa. 134 (1998) .....6

*Hutcherson v. Pa. Interscholastic Athletic Ass'n*,
No. 23-1785, 2024 WL 4362451 (W.D. Pa. Sept. 30, 2024) .....7

*Johnson v. Caparelli*,
425 Pa. Super. 404 (1993) .....6

*Long v. Spalding Auto. Inc.*,
337 F. Supp. 3d 485 (E.D. Pa. 2018) .....11

*Medina v. Planned Parenthood S. Atl.*,
606 U.S. 357 (2025) .....5

*N. Penn Towns, LP v. Concert Golf Partners, LLC*,
554 F. Supp. 3d 665 (E.D. Pa. 2021) .....10

*National Collegiate Athletic Ass'n v. Smith*,
525 U.S. 459 (1999) .....1, 5, 6

*NRA Grp., LLC v. Durenleau*,
154 F.4th 153 (3d Cir. 2025) .....2, 10

*Pa. Ass'n of Edwards Heirs v. Rightenour*,
235 F.3d 839 (3d Cir. 2000)....5

*Parker v. Cenlar FSB*,
No. CV 20-02175, 2021 WL 22828 (E.D. Pa. Jan. 4, 2021) ....7

*Payne v. Woods Servs., Inc.*,
520 F. Supp. 3d 670 (E.D. Pa. 2021) ....2, 11

*Sarpolis v. Tereshko*,
26 F. Supp. 3d 407 (E.D. Pa. 2014) ....10

*Scully v. US WATS, Inc.*,
238 F.3d 497 (3d Cir. 2001)....9

*Sheridan v. NGK Metals Corp.*,
609 F.3d 239 (3d Cir. 2010)....4

*Weir v. University of Pitt.*,
No. 21-1206, 2022 WL 17095566 (W.D. Pa. Aug. 18, 2022)....11

*West Virginia v. B.P.J.*,
146 S. Ct. 2356 (2026).... *passim*

*Yurchak v. Atkinson & Mullen Travel, Inc.*,
207 F. App'x 181 (3d Cir. 2006) ....4

*Zhornitsky v. Yale Sch. of Med.*,
No. 3:24-CV-00018, 2024 WL 4880695 (D. Conn. Nov. 25, 2024)....1, 6

**Statutes, Rules & Regulations**

20 U.S.C. § 1681–3....5

20 U.S.C. § 1681(a) ....1, 3

Fed. R. Civ. P. 12(b)(6)....4, 14

## I. INTRODUCTION

On her third attempt, Plaintiff Evelyn Parts still fails to allege any viable cause of action against the National Collegiate Athletic Association ("NCAA"), based on her central allegation that Swarthmore College barred her from its women's track and field team for two months in 2025 because she is a transgender woman. Plaintiff's two federal claims under Title IX (20 U.S.C. § 1681(a)) (Counts I and III) fail for multiple reasons. First, the U.S. Supreme Court has held Title IX does not prohibit separate sports teams for biological women. *West Virginia v. B.P.J.*, 146 S. Ct. 2356, 2371 (2026). Second, Title IX does not "confer aiding and abetting liability on non-educational entities." *Zhornitsky v. Yale Sch. of Med.*, No. 3:24-CV-00018, 2024 WL 4880695, at *6 (D. Conn. Nov. 25, 2024). Third, Plaintiff failed to allege that the NCAA received federal funds, which is required to apply Title IX against the NCAA. *See National Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 470 (1999); *see also Gaines v. National Collegiate Athletic Ass'n*, No. 1:24-cv-01109, at 14 (N.D. Ga. Sept. 28, 2026), ECF No. 196.[1]

The Court should also dismiss Plaintiff's common law claims against the NCAA. First, in light of *B.P.J.*, the NCAA conduct complained about—the NCAA Board of Governors ("NCAA BOG") voting to update the Participation Policy for Transgender Student Athletes—cannot meet the extremely high standard for intentional infliction of emotional distress ("IIED") (Count II) of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Davis v. Wigen*, 82 F.4th 204, 216 (3d Cir. 2023) (citation omitted).[2] Plaintiff's additional claim for aiding

---

[1] The *Gaines* decision is currently pending publication; attached as Exhibit A is a copy of the decision for ease of access.

[2] Although immaterial to granting this motion, the NCAA's member schools and conferences promulgate their own rules, policies, and eligibility standards consistent with legislative and governance processes established by the membership. Through this process, the NCAA Board of

and abetting IIED in Count IV fails because Plaintiff has no valid IIED claim against Swarthmore. *See Austin v. Hill*, No. CIV.A. 11-2847, 2014 WL 1386338, at *13 (E.D. Pa. Apr. 9, 2014).

Plaintiff's civil conspiracy claim against the NCAA in Count V fails in three ways: (1) Plaintiff does not allege an agreement by the NCAA with any other Defendant; (2) Plaintiff does not allege the NCAA had a malicious intent to harm her; and (3) Plaintiff's other claims fail, and civil conspiracy cannot stand on its own. *See, e.g.*, *NRA Grp., LLC v. Durenleau*, 154 F.4th 153, 172–73 (3d Cir. 2025); *Hawley v. Salamon*, No. 3:25-CV-0728, 2025 WL 2154362, at *6 (M.D. Pa. July 29, 2025); *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 418–19 (E.D. Pa. 2009) (Rufe, J.).

Finally, Plaintiff's newly added claims that the NCAA aided and abetted Swarthmore's alleged violations of the Pennsylvania Fair Educational Opportunity Act ("PFEOA") and the Pennsylvania Human Relations Act ("PHRA") in Counts VIII and XI fail because Plaintiff has not alleged any predicate violation of those laws by Swarthmore. *See Payne v. Woods Servs., Inc.*, 520 F. Supp. 3d 670, 681 (E.D. Pa. 2021). Plaintiff also fails to allege sufficient facts to support aiding and abetting liability against the NCAA. *See Bonilla v. City of Allentown*, 359 F. Supp. 3d 281, 301 (E.D. Pa. 2019), *as amended* (Apr. 19, 2019).

Accordingly, the Court should dismiss with prejudice all claims against the NCAA.

## II. PROCEDURAL HISTORY AND STATEMENT OF ALLEGED FACTS

On August 14, 2025, Plaintiff filed a Complaint against Swarthmore College, four Swarthmore College employees, and the NCAA. According to the Complaint, Plaintiff is a

---

Governors voted to update the participation policy. *See* https://www.ncaa.org/news/2025/2/6/media-center-ncaa-announces-transgender-student-athlete-participation-policy-change.aspx. The Board of Governors' vote took place the day after President Trump's Executive Order 14201, "Keeping Men Out of Women's Sports," https://www.whitehouse.gov/presidential-actions/2025/02/keeping-men-out-of-womens-sports/.

transgender student-athlete who was a member of the Swarthmore College women's track team. (Compl., ¶¶ 2–3, 41–55, ECF No. 1).

The Complaint alleged that, on February 6, 2025, the NCAA "issued the *Participating* [sic] *Policy for Transgender Student Athletes*." (*Id.* ¶ 4). It further alleged that the participation policy applied to all member schools, and that noncomplying schools would risk sanctions—although the policy included a statement that "schools are subject to local, state and federal legislation and such legislation supersedes the rules of the NCAA." (*Id.* ¶¶ 5–6).

The Complaint also alleged that Swarthmore's general counsel and Title IX leadership conducted an analysis of Title IX and state law. (*Id.* ¶¶ 58, 60, 67). On February 12, 2025, Swarthmore allegedly communicated to Plaintiff that it was choosing to follow the NCAA policy and prohibit Plaintiff from representing Swarthmore's women's track team at meets. (*Id.* ¶¶ 6, 63, 64). Two months later, on April 11, 2025, Swarthmore allegedly reinstated Plaintiff to compete on the women's track team, which she did until her graduation in May 2025. (*Id.* ¶¶ 12, 90–93).

Plaintiff asserted three claims in her original Complaint: (1) that Swarthmore violated Title IX (20 U.S.C. § 1681(a)) (Count I); (2) that all defendants intentionally inflicted emotional distress upon her (Count II); and (3) that all the defendants had engaged in a civil conspiracy against her (Count III). (*Id.* ¶¶ 94–115).

On October 27, 2025, the NCAA, Swarthmore, and individual defendants filed motions to dismiss all counts in the complaint for failure to state a claim. (ECF Nos. 16 & 17). Instead of opposing the motions, Plaintiff filed an Amended Complaint, adding two additional claims against the NCAA: (1) that the NCAA aided and abetted Swarthmore in violating Title IX (Count III); and (2) that the NCAA aided and abetted Swarthmore in effectuating intentional infliction of emotional

distress (Count IV). (Am. Compl. ¶¶ 112–22). Plaintiff made no new factual allegations to support the two new claims or remedy the insufficiencies in her original complaint.

The NCAA, Swarthmore, and individual defendants again filed motions to dismiss. (ECF Nos. 22 & 23). Plaintiff requested a stay pending the Supreme Court's decision in *B.P.J.* (ECF No. 24). After the Supreme Court issued its opinion holding that refusing to permit those assigned male at birth to compete on women's teams did not violate Title IX, Plaintiff filed the instant Second Amended Complaint (SAC). (ECF No. 30). But Plaintiff did not drop her Title IX claims. Instead, she added six new claims, including two against the NCAA for aiding and abetting alleged violations of the PFEOA and PHRA (Counts VIII and XI).

## III. LEGAL STANDARD

A complaint must be dismissed on a Fed. R. Civ. P. 12(b)(6) motion if it does not allege sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court is not bound to assume the truth of legal conclusions or bald assertions merely because they are stated in the form of factual allegations. *Twombly*, 550 U.S. at 555; *Yurchak v. Atkinson & Mullen Travel, Inc.*, 207 F. App'x 181, 183 (3d Cir. 2006).

## IV. ARGUMENT

### A. Plaintiff Fails to State a Claim for Aiding and Abetting a Title IX Violation

Plaintiff cannot state a claim against the NCAA for aiding and abetting Swarthmore's alleged Title IX violation for several reasons.

As a threshold matter, Title IX does not protect the conduct alleged. In *West Virginia v. B.P.J. by Jackson*, the Supreme Court unequivocally held that "Title IX permits schools to maintain women's and girls' sports for biological females." *B.P.J.*, 146 S. Ct. at 2371. That holding forecloses any Title IX claim here. Plaintiff's exclusion from Swarthmore's women's track and field team due to her biological sex is not a violation of Title IX. If no Title IX violation occurred, the NCAA cannot have aided and abetted a Title IX violation and Count III should be dismissed.

Even if Plaintiff could allege a viable Title IX claim against Swarthmore, the NCAA cannot be held liable for aiding and abetting a Title IX violation.[3] (SAC ¶¶ 112–116). Title IX does not have an aiding and abetting provision, and Title IX liability cannot extend beyond the recipients of federal funds. 20 U.S.C. § 1681–3. "Congress knew how to impose aiding and abetting liability when it chose to do so." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176 (1994) (holding that the text of the Securities Exchange Act does not reach those who aid and abet a § 10(b) violation). "If … Congress intended to impose aiding and abetting liability, … it would have used the words 'aid' and 'abet' in the statutory text." *Id.* at 177. Here, it did not, and the text of the statute controls. *Id.* at 173; *Pa. Ass'n of Edwards Heirs v. Rightenour*, 235 F.3d 839, 840 (3d Cir. 2000) (applying same reasoning to conclude that no private cause of action exists for aiding and abetting RICO violations).[4]

---

[3] Plaintiff does not allege against the NCAA a direct violation of Title IX. *See* SAC ¶¶ 94–107. Nor could she because the NCAA is not a recipient of federal funds. *See Smith*, 525 U.S. at 470 (NCAA not subject to Title IX); *Gaines*, at 15 (Ex. A) (dismissing Title IX claims against the NCAA because "there is no evidence that the NCAA ever received, or could have received, federal funds").

[4] *See also Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 369 n.1 (2025) (recognizing that while the Supreme Court inferred a private cause of action under Title IX against educational institutions that received federal funding in *Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979), which Congress later ratified, the Court has since "retreated from *Cannon*'s reasoning … [and] has emphasized that the decision's 'language' no longer controls.").

No federal court has ever recognized aiding and abetting liability under Title IX. The only federal court to have addressed that issue ruled that Title IX does not "confer aiding and abetting liability on non-educational entities." *See Zhornitsky*, 2024 WL 4880695, at *6. Nor could a court constitutionally impose Title IX liability on an entity that did not receive federal funds. *See, e.g.*, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) ("Title IX reaches institutions and programs that receive federal funds"). Here, Plaintiff fails to allege that the NCAA received federal funds, which provides yet another reason to dismiss the Title IX claims against the NCAA. *See Smith*, 525 U.S. at 470. Plaintiff also cannot cure this deficiency by amendment. *Gaines*, at 14-15 (Ex. A) (finding that NCAA was not recipient of federal funds).

**B. Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress**

Plaintiff fails to state an IIED claim against the NCAA because (1) she does not adequately allege intentional outrageous or extreme conduct by the NCAA, and (2) she does not allege that the NCAA directed such conduct to Plaintiff specifically. Those deficiencies cannot be cured, and therefore, Plaintiff's IIED claim against the NCAA should be dismissed with prejudice.

***First***, as a matter of Pennsylvania law, Plaintiff cannot show that the NCAA's conduct was "outrageous or extreme" as to establish an IIED claim. *See Davis*, 82 F.4th at 216 (affirming dismissal of an IIED claim because conduct "d[id] not rise to [the] level" necessary to state an IIED claim). A court should dismiss an IIED claim when the "Defendants' conduct is not the sort of behavior that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Davis*, 82 F.4th at 216 (quoting *Hoy v. Angelone*, 554 Pa. 134, 151 (1998)).

The Court should determine as a matter of law "in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Johnson v. Caparelli*, 425 Pa. Super. 404, 412 (1993). Courts engaging in that analysis have rarely permitted

IIED claims to move forward and have observed that they may do so "in only very egregious cases." *Geraghty v. E. Bradford Twp.*, 584 F. Supp. 3d 10, 20 (E.D. Pa. 2022). The level of egregiousness must be akin to fabricating records to suggest a homicide, *see Banyas v. Lower Bucks Hosp.*, 293 Pa. Super. 122, 127 (1981), or making a public announcement of a fatal medical diagnosis that a physician knew was false, *see Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1274–75 (3d Cir. 1979) (finding the physician's actions constituted "intolerable professional conduct").

In the context of lawsuits alleging discrimination, "[c]ourts applying Pennsylvania law have repeatedly found that allegations of . . . discrimination, even when coupled with retaliatory conduct, do not meet the 'extreme and outrageous conduct' standard necessary to state a claim of IIED." *Parker v. Cenlar FSB*, No. CV 20-02175, 2021 WL 22828, at *6 (E.D. Pa. Jan. 4, 2021) (dismissing IIED claim). Indeed, the Western District of Pennsylvania has recently ruled that an allegation of discrimination related to student-athlete participation "fails to state a plausible claim for . . . IIED." *Hutcherson v. Pa. Interscholastic Athletic Ass'n*, No. 23-1785, 2024 WL 4362451, at *2 (W.D. Pa. Sept. 30, 2024).

Plaintiff's allegation that the NCAA "issued" an athletic participation policy that "bans transgender women from competing on women's teams" (SAC ¶¶ 4–5) does not come close to being so outrageous and extreme as to be "beyond all possible bounds of decency." *Davis*, 82 F.4th at 216. Far from outrageous, the Supreme Court has approved the practice and held that it does not violate Title IX or the Equal Protection Clause. *See B.P.J.*, 146 S. Ct. at 2367, 2367.

***Second***, the Court should dismiss the IIED claim because Plaintiff does not allege that the NCAA's conduct was intentionally directed at her personally. In *Angus v. Shiley, Inc.*, 989 F.2d 142, 148 (3d Cir. 1993), the Third Circuit refused to permit an IIED claim in a products

liability case in which "the alleged wrongdoing was directed at a class of consumers rather than a particular plaintiff." The court emphasized that Pennsylvania IIED cases arose "in narrow situations involving particular plaintiffs in which defendants were accused of wrongful conduct either ***aimed specifically at*** the plaintiffs or likely to have a special impact on them as distinguished from a large group of persons." *Id.* at 147 (emphasis added). Here, Plaintiff does not and cannot show that the alleged "discriminatory policy of the NCAA" was created specifically for her. Just the opposite. Plaintiff alleges that the NCAA "admonished" schools that did not follow the policy, establishing that it was a broad change in policy applied to all member schools. (*See* SAC ¶ 5).

### C. Plaintiff Fails to State a Claim for Aiding and Abetting IIED

Plaintiff's aiding and abetting IIED claim against the NCAA fails because she has not stated a predicate IIED claim. *See Austin*, 2014 WL 1386338 at *13 (holding that because plaintiff failed to establish a prima facie case for IIED, his aiding and abetting IIED claim also must fail). For all of the reasons set forth in Swarthmore's Motion to Dismiss brief, (ECF No. 22 at 12–14), Plaintiff failed to allege conduct against Swarthmore that could possibly be regarded as outrageous. *See also B.P.J.*, 146 S. Ct. at 2367.

Even without that Supreme Court authority, Plaintiff's aiding and abetting claim against the NCAA would still fail because Plaintiff fails to plead factual allegations against the NCAA for that claim under Pennsylvania law. The Second Amended Complaint does not meet the criteria for the tort of aiding and abetting pursuant to § 876 of the Restatement (Second) of Torts, Persons Acting in Concert, which Pennsylvania follows. *See Austin*, 2014 WL 1386338, at *13. Nowhere does the Second Amended Complaint allege specific conduct in which the NCAA engaged to either act in concert with Swarthmore to commit a tortious act or provide substantial assistance to Swarthmore to commit such an act. Instead, the Second Amended Complaint offers only conclusory allegations that the NCAA "acted in concert with the other defendants with the

common purpose of discrimination" against Plaintiff, (SAC ¶ 36), and "aided and abetted Swarthmore College in effectuating the infliction of emotional distress." (*Id.* at ¶ 121). Without more, Plaintiff cannot establish the conduct required to make a prima facie case for an aiding and abetting IIED claim, and therefore, her claim should be dismissed with prejudice.

**D. Plaintiff Fails to State a Claim for Civil Conspiracy**

Plaintiff's civil conspiracy claim against the NCAA fails for three independent reasons.

***First,*** the Second Amended Complaint fails to allege the NCAA entered into an agreement with any of the other Defendants to act "with a common purpose" to violate the law, which is a required element under Pennsylvania law. *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (citation omitted); *see also Scully v. US WATS, Inc.,* 238 F.3d 497, 516 (3d Cir. 2001). "A plaintiff must do more than show that the . . . actors might have had a common goal or acted in concert, but must allege with sufficient particularity and specific material facts that the defendants reached some understanding or agreement." *Dichter v. City of Phila.*, No. 14-5611, 2015 WL 1511028, at *14 (E.D. Pa. Apr. 1, 2015). Here, Plaintiff makes only the conclusory assertion that "[a]t all times relevant to the present action, the NCAA acted in concert with the other defendants for the common purpose of discrimination" against Plaintiff. (SAC ¶ 36). The Third Circuit and district courts have uniformly confirmed that this sort of recitation of "talismanic phrases like 'conspire' and 'act in concert'" are insufficient. *Hawley*, 2025 WL 2154362 at *6 (citation omitted).

The SAC actually describes the opposite of an agreement: according to Plaintiff's own allegations, the NCAA and Swarthmore acted *independently*. Plaintiff alleges that the NCAA "issued" a participation policy, which applied to all member schools and was not targeted at either Plaintiff or Swarthmore specifically. (SAC ¶¶ 4–6). Plaintiff then alleges that Swarthmore "chose" to implement the policy after its general counsel and Title IX leadership conducted an independent

evaluation of Title IX and state laws. (*E.g., id.* ¶¶ 6, 59, 61, 64, 68). Plaintiff's allegation that Swarthmore changed course and reinstated Plaintiff to its women's track team only two months later, diverging from the NCAA policy, further belies the existence of any conspiracy. (*Id.* ¶ 90). At most, Plaintiff has alleged that the Defendants took similar actions, which is insufficient for Plaintiff's civil conspiracy claim to survive. *See, e.g.*, *Dichter*, 2015 WL 1511028 at *14; *Dempsey v. Bucknell Univ.*, No. 4:11-cv-1679, 2012 WL 1569826, at *12 (M.D. Pa. May 3, 2012).

***Second***, Plaintiff has not met the "demanding standard" of alleging that "malicious intent" is the "sole purpose" of the conspiracy. *NRA Grp., LLC*, 154 F.4th at 172. In this District, "[c]ourts routinely dismiss civil conspiracy claims where the plaintiff failed to allege that the defendants acted maliciously or acted with the sole intent to injure him or her." *N. Penn Towns, LP v. Concert Golf Partners, LLC*, 554 F. Supp. 3d 665, 713 (E.D. Pa. 2021) (collecting cases); *see also Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 423–24 (E.D. Pa. 2014) (dismissing civil conspiracy claim for same reason). Here, Plaintiff does not even attempt to allege that the NCAA implemented a policy for the sole purpose of injuring Plaintiff. Nor could she, because she admits through her allegations that the broad change in policy applied to all member schools. (SAC ¶ 5).

***Third***, civil conspiracy under Pennsylvania common law "must be based upon an independent underlying civil cause of action." *NRA Grp.*, 154 F.4th at 172 (quoting *Bro-Tech*, 651 F. Supp. 2d at 418). As discussed herein, Plaintiff fails to state a claim against the NCAA or Swarthmore. For each of these independent reasons, the Court should dismiss Plaintiff's claim for civil conspiracy with prejudice.

### E. Plaintiff Fails to State a Claim Against the NCAA for Aiding and Abetting PFEOA and PHRA Violations

Plaintiff's new aiding and abetting claims against the NCAA under the PFEOA and the PHRA fail because Plaintiff does not adequately allege: (1) that Swarthmore committed an

underlying violation of either statute, and (2) that the NCAA aided and abetted Swarthmore's conduct.

For an aiding and abetting claim, Plaintiff must first establish that Swarthmore violated the PFEOA or the PHRA. *See Payne*, 520 F. Supp. 3d at 681 (finding aiding and abetting claims cannot proceed where underlying violations are not adequately alleged); *see also Long v. Spalding Auto. Inc.*, 337 F. Supp. 3d 485, 494 (E.D. Pa. 2018) (same). As set forth in Swarthmore's separate Motion to Dismiss brief, Plaintiff's PHRA and PFEOA claims fail for the same reasons her Title IX claims fail. The Pennsylvania Supreme Court and the Third Circuit have repeatedly held that the PHRA and PFEOA state discrimination statutes should be read consistently with federal law. *Chmill v. City of Pittsburgh*, 412 A.2d 860, 871 (Pa. 1980); *Fogelman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002); *see also Weir v. University of Pitt.*, No. 21-1206, 2022 WL 17095566, at *10 (W.D. Pa. Aug. 18, 2022). Even when the Pennsylvania Human Relations Commission ("PHRC") expanded its definition of "sex" to include gender identity or expression, it also made clear that its intention was to adopt a definition *consistent with federal anti-discrimination law*.[5] *See* Pa. Hum. Rels. Comm'n, Guidance on Discrimination on the Basis of Sex under the PHRA, *available at* https://www.pa.gov/content/dam/copapwp-pagov/en/phrc/non-discrimination/APPROVED%20Sex%20Discrimination%20Guidance%20PHRA.pdf (explaining that the necessity of its regulation was that "Pennsylvania courts have consistently held that the PHRA is to be interpreted consistently with federal anti-discrimination law" and that the changes were made in light of "evolving case law of interpretations of discrimination 'because of . . . sex' under Title VII").

[5] The PHRC's adoption of this regulation came after the United States Supreme Court decided *Bostock v. Clayton County*, holding that Title VII prohibits firing an employee for being gay or transgender. 590 U.S. 644 (2020)

The PHRA and PFEOA should be interpreted consistent with *B.P.J.*, despite the PHRC's regulation defining sex to include gender identity. *B.P.J.* reconciled the tension between prohibiting discrimination against gay and transgender individuals under Title VII in *Bostock* with permitting segregation of sports teams based on biological differences under Title IX by recognizing the "distinctiveness of competitive sports—and the safety and competitive fairness issues that can arise when females are forced to compete against males." *B.P.J.*, 146 S.Ct. at 2372–3 (explaining that Title IX and Title VII statutory schemes are different). Accordingly, the same reasoning in *B.P.J.* permitting sex-based decision-making in the sports context applies to the PHRA and PFEOA, making Swarthmore's decision to restrict its women's track and field team to biological women compliant with either statute.

Plaintiff also fails to adequately allege that the NCAA aided and abetted a violation of either statute. Indeed, Plaintiff concedes that NCAA's policy recognized that "schools are subject to local, state, and federal legislation and such legislation supersedes the rules of the NCAA." (SAC ¶ 5.) According to Plaintiff's own allegations, "Swarthmore College *chose* to follow the NCAA and disregard … state law" when it did not allow Plaintiff to participate in the women's track team for two months. (*Id.* ¶ 6) (emphasis added). This is consistent with Third Circuit case law recognizing that the NCAA does not control its member institutions. *See Cureton v. National Collegiate Athletic Ass'n*, 198 F.3d 107, 118 (3d Cir. 1999) (finding that NCAA's promulgation of "rules and regulations with respect to intercollegiate athletics [does not mean] that the NCAA has controlling authority over its members' programs"). Plaintiff alleges that Swarthmore conducted its own independent evaluation of state laws. (*E.g.,* SAC ¶¶ 59, 61, 64, 68.) Plaintiff's allegation that Swarthmore diverged from the NCAA policy only two months later by permitting Plaintiff to compete on its women's track team further reinforces that the NCAA did not compel Swarthmore's

actions. (*Id.* ¶ 90). Plaintiff fails to adequately allege that the NCAA aided and abetted Swarthmore's purported violations of the PFEOA and PHRA. *See Bonilla*, 359 F. Supp. 3d at 301 (dismissing claims where the complaint lacked allegations demonstrating that the defendants aided and abetted discriminatory conduct); *see also Hollinghead v. City of York*, 912 F. Supp. 2d 209, 224 (M.D. Pa. 2012), *aff'd Hollinghead v. City of New York*, 592 F. App'x 110 (3d Cir. 2015) (same). Accordingly, Counts VIII and XI should be dismissed with prejudice.

## V. THE CLAIMS AGAINST THE NCAA SHOULD BE DISMISSED WITH PREJUDICE

All of Plaintiff's claims against the NCAA should be dismissed with prejudice. Plaintiff has had the opportunity to amend her Complaint—not once, but twice—to address deficiencies but she has failed to do so. Even after the Supreme Court foreclosed her Title IX claims in its *B.P.J.* decision, Plaintiff retained these counts in the operative complaint. This alone demonstrates that permitting further amendments would be futile. Even if Plaintiff were permitted to *again* amend her Complaint, her claims would fail for the reasons set forth above.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's claims against the NCAA should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: October 20, 2026

Respectfully submitted,

Counsel for Defendant National Collegiate Athletic Association

/s/ Katharine M. Ladd
Katharine M. Ladd
PA Bar No. 323376
FAEGRE DRINKER BIDDLE & REATH LLP
1 Logan Square # 2000
Philadelphia, PA 19103
Telephone: (215) 988-2841
Facsimile: (215) 988-2757
Email: katie.ladd@faegredrinker.com

Tania Kazi (Rice) (admitted *pro hac vice*)
ALSTON & BIRD LLP
55 2nd Street, Suite 2100
San Francisco, CA 94105
Telephone: (415) 243-1064
Email: tania.kazi@alston.com

/s/ Cari K. Dawson
Cari K. Dawson (admitted *pro hac vice)*
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7766
Email: cari.dawson@alston.com

Christopher C. Marquardt (admitted *pro hac vice)*
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7827
Email: chris.marquardt@alston.com